NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0248n.06
Filed: April 4, 2005

No. 03-1548

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| CHARLES CREHORE, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |

Before:     BOGGS, Chief Judge; DAUGHTREY, Circuit Judge; and ALDRICH, District
Judge.[*]

PER CURIAM.   In this § 2255 habeas petition, appellant Crehore argues that he was

improperly sentenced to a mandatory minimum of twenty years for his role in a conspiracy to

distribute marijuana, instead of the ten-year sentence that should have been imposed under the

sentencing guidelines.   He alleges that ineffective assistance of counsel resulted in the sentencing

court incorrectly applying the guidelines to his case and made it possible for this court on direct

appeal to rely on now-discredited facts to affirm his sentence.   We hold that Crehore's counsel was

not ineffective in representing his client during the sentencing hearing or on appeal.   Accordingly,

---

[*]The Honorable Ann Aldrich, United States District Judge for the Northern District of
Ohio, sitting by designation.

No. 03-1548

we affirm the district court's denial of Crehore's habeas petition on the basis of ineffective assistance of counsel, although we share the district court's concerns about the outcome of this case.

**I**

In 1993, a California drug dealer, Richard Sumpter, began importing large quantities of marijuana from Mexico, which he shipped for sale to Detroit. Paul Free frequently coordinated the marijuana shipments for Sumpter. Charles Crehore, the petitioner in this case, started working as one of Free's couriers in December 1993, when Free arranged for Crehore to deliver more than 400 pounds of marijuana to Detroit. Crehore was involved in the operation throughout January 1994. On January 28, DEA agents arranged a controlled delivery to Sumpter and his colleagues, including Crehore, in Detroit and then arrested the group. Shortly thereafter, Paul Free was arrested in California. Crehore and Free were released on bond. Free fled to Mexico and did not return to the United States until July 1994.

On October 7, 1994, a grand jury in the Eastern District of Michigan charged 31 defendants, including Crehore, with one count of conspiracy to possess with intent to distribute, and distribution of, more than 1,000 kilograms of marijuana. A second count charged Crehore and four others with the substantive offense of possession of 100 kilograms or more of marijuana, with intent to distribute, on or about January 28, 1994. Crehore was tried with his co-defendants and, after an eight-week trial, he was convicted of the conspiracy charge but acquitted on the second count.

The district court imposed a 240-month prison term, under 21 U.S.C. § 841, after finding that Crehore could be held responsible for more than 1000 kilograms of marijuana and that he had a prior felony drug offense. The judge assigned him responsibility for: (1) a December 1993 shipment and two January 1994 shipments, estimated at a total of 1500 pounds; (2) the January 25 and February 5 actual seizures, totaling an additional 665 pounds; and (3) an estimated 500-pound load that was to have been delivered in June 1994, but which was destroyed in a warehouse fire in Mexico. The sentencing court found that the "testimony plus the telephone calls," showed that Crehore was still involved in the conspiracy after his arrest. Attributing the June load to Crehore, despite the fact it was never delivered, put him over the 1000-kilogram level and, combined with a nine-year-old drug offense that resulted in a 21-day suspended sentence, resulted in a mandatory minimum sentence of twenty years.

Crehore appealed his sentence to the Sixth Circuit. At oral argument, the government could not provide citations to the record to support the allegation that Crehore had maintained contact with Free after his arrest. In a follow-up letter, dated March 27, 1998, the government justified attributing the June shipment to Crehore on four grounds: (1) Crehore was in touch with Miguel Ontiveros, another co-conspirator; (2) Crehore was in touch with Free "before and after" the January 25th marijuana delivery; (3) Crehore had contacted Free's lawyer; and (4) Crehore met with a co-conspirator, Yvette Duran, after his release on bond. The letter did not explicitly retract the allegation that Crehore and Free had been in steady contact after their release on bond, although the government has acknowledged in the present case that its brief on direct appeal "contained an error

–3–

regarding one aspect of the petitioner's post-arrest conduct," namely the alleged Free-Crehore post-arrest communication. Appellee Br. at 8, 18.

This court upheld the district court's sentence, stating: "Crehore's arrest does not negate any liability attributed to him for the June 1994 load. Based on the taped conversation between Diane Sumpter and Free [refering to the destruction of the June load but not mentioning Crehore specifically], and *Crehore's pattern of contemporaneous calls to Free after his release on bond*, it is also apparent that he continued to be involved with the conspiracy even after his arrest." *United States v. Gaitan-Acevedo,* 148 F.3d 577, 594 (6th Cir. 1998) (emphasis added). In sum, the government cannot now support one of the factual findings we relied on in affirming Crehore's sentence.

In a *pro se* habeas petition under 28 U.S.C. § 2255, Crehore argued that his conviction was unconstitutional because it violated his due process rights and was attributable to ineffective assistance of counsel. The magistrate judge sympathized with the latter argument, finding that "it was incumbent upon counsel to vigorously challenge the government's assertions," which the magistrate judge concluded that counsel had not done. She recommended that Crehore's case be remanded for reconsideration of his sentence, but the district court did not accept the recommendation. Terming it a "difficult decision," Judge Cohn concluded that counsel had not been ineffective, and that "there is nothing the Court can do in the circumstances in which the issue is raised." He granted a certificate of appealability *sua sponte* on the "issue of whether Petitioner's counsel was ineffective at sentencing and on appeal for not adequately challenging the quantity of marijuana attributable to the Petitioner."

**II**

A federal prisoner may challenge a sentence if it "was imposed in violation of the Constitution or laws of the United States . . . or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . . " 28 U.S.C. § 2255. "In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Mallett v. United States,* 334 F.3d 491, 496-97 (6th Cir. 2003), *cert. denied*, 540 U.S. 1133 (2004) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). A claim of ineffective assistance of counsel is a proper basis for a § 2255 motion. *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003). We review a district court's denial of a motion filed under § 2255 for clear error regarding the facts and *de novo* regarding conclusions of law. *Paulino v. United States,* 352 F.3d 1056, 1058 (6th Cir. 2003). A claim of ineffective assistance of counsel is considered a mixed question of law and fact that is reviewed *de novo*, although any relevant findings of fact are subject to the "clear error" standard of review. *United States v. Jackson*, 181 F.3d 740, 744 (6th Cir. 1999).

Ineffective assistance of counsel is judged under the two-part *Strickland* test, which requires showing performance of counsel that falls below an objective standard of reasonableness according to prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Second, the defendant must show prejudice, meaning a reasonable probability that the outcome would have been different absent the deficient performance. *Id.* at 694. Judicial review of an attorney's performance is very deferential: a reviewing court must "indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered trial strategy." *Id.* at 689. Finally, a defendant is entitled to competent representation, but not a perfect defense. *United States v. Natanel*, 938 F.2d 302, 309 (1st Cir. 1991).

## A. *Sentencing Hearing*

Crehore first argues that his counsel should have prevented the sentencing judge from incorrectly applying the sentencing guidelines in this case. A defendant involved in a conspiracy is held accountable for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG § 1B1.3(a)(1)(B). However, when assigning responsibility for specific amounts of narcotics to an individual defendant, the judge must determine both whether (1) the co-conspirator's act was foreseeable; *and* (2) the act falls within "the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement)." USSG § 1B1.3, comment. (n.2); *United States v. Campbell*, 279 F.3d 392, 399-400 (6th Cir. 2002) (holding that failing to apply the application note two-part test is an abuse of discretion). A district court must consider both parts of the test in order to anchor the base offense level to an individual finding of responsibility. *United States v. Jenkins*, 4 F.3d 1338, 1347 (6th Cir. 1993) (holding that insufficient evidence in an appellate record regarding either scope of consent or foreseeability requires remand); *see also*

*United States v. Critton*, 43 F.3d 1089, 1099 (6th Cir. 1995). Therefore, the district court committed reversible error when it only considered the extent to which Crehore could have foreseen each of his co-conspirators's deliveries and did not address the extent to which Crehore had agreed to participate in the conspiracy.

Crehore argues first that his counsel was ineffective during the sentencing hearing for failing to insist that the sentencing judge consider both foreseeability and the scope of his agreement to participate in the conspiracy. This argument does not withstand scrutiny, however. Crehore's attorney at sentencing, Nicholas Vendittelli,[1] cited both the Guidelines application note and *Jenkins* in his sentencing memorandum. During the sentencing hearing, he did not use the term "scope of agreement," but repeatedly argued that Crehore was simply doing his old friend Paul Free, the coordinator of the deliveries, a favor, implying an informal, *ad hoc* involvement. Vendittelli also argued that "Charlie did not want to cooperate with Sumpter [the lead conspirator]; did not want to drive the marijuana to the house where it was supposed to be unloaded. . . . He didn't want to drive any more. He didn't want to deliver it. He didn't want to be involved; he just wanted to go home." These comments addressed the scope of Crehore's agreement to participate in the overall operation. Vendittelli accurately briefed and argued the law during Crehore's sentencing; he is not responsible for any errors the sentencing judge made.

Vendittelli did not challenge the sentencing judge when he estimated the weight of four loads of marijuana for which Crehore was held responsible at 500 pounds each. The same judge had estimated that the same four loads weighed only 400 pounds each when sentencing Paul Free, one

---

[1]Mr. Vendittelli did not represent Crehore at trial.

of Crehore's co-conspirators. The magistrate judge concluded that Crehore's sentence had "take[n] on a troubling air of arbitrariness," and faulted Vendittelli for not emphasizing this on appeal. Vendittelli was probably caught off-guard at the hearing because the judge used the 400-pound figure for the preliminary calculations during the proceeding itself. Conflicting testimony at the trial indicated that the December 1993 load may have weighed up to 500 pounds, but Vendittelli pointed out to the judge that Crehore was entitled to the lower figure under Sixth Circuit precedent. *See United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir. 1990) (stating that a court "must err on the side of caution" when choosing between plausible estimates of a particular drug quantity for sentencing purposes). It was therefore somewhat surprising that the judge, when computing the final amount, announced that "I will choose to make that [the December shipment] 500 pounds in light of the argument here," and then proceeded to apply that higher number for the rest of the estimated shipments.

In and of itself, the 500-pound estimate error did not put Crehore over the 1000-kilogram threshold.[2] Therefore, even if it were ineffective assistance for Vendittelli not to object to the higher estimate, Crehore was not prejudiced and thus this failure does not meet the second part of the *Strickland* test. *Strickland*, 466 U.S. at 687. In addition, Vendittelli may have made a strategic decision not to challenge the judge because he had not yet considered the government's motion for an obstruction of justice enhancement. A lawyer's strategic decisions are virtually unassailable on

---

[2]Not counting the June 1994 shipment, Crehore would have been held responsible for 1865 pounds, had he received the benefit of the 400-pound estimates, as did his co-conspirators. Using the 500-pound estimate, the total, 2165 pounds, is still less than 1000 kilograms. However, adding either 400 or 500 pounds for the June shipment would put Crehore over the limit.

appeal. *Campbell v. Coyle,* 260 F.3d 531, 556 (6th Cir. 2001) (quoting *Strickland*, 466 U.S. at 690).

It was not objectively unreasonable for Vendittelli to have decided to focus his argument elsewhere, especially since the decision to estimate the loads at 500 pounds each did not determine the outcome.

The ineffective assistance of counsel claim turns on whether Vendittelli competently challenged the attribution of the June 1994 load to Crehore, because it was this final shipment that arguably put Crehore over the 1000-kilogram limit.[3]  Vendittelli argued that the prosecution was trying to "body slam" his client and characterized the factual basis for continuing to include Crehore in the conspiracy after his arrest for sentencing purposes as "double hearsay" and "misinformation." He also challenged the evidence that the government presented to hold Crehore responsible for the June shipment in particular, arguing that one telephone call to the wife of a co-conspirator (Sumpter's wife to let her know he was in jail in Detroit) could not "show continuing involvement in a criminal activity and foreseeability of these other [post-arrest] loads."

The transcript of the sentencing hearing shows that, overall, Vendittelli provided Crehore with a vigorous defense; he even presented a novel theory of statutory construction that would have allowed the judge to avoid imposing the mandatory 20-year sentence.  Just before passing sentence, the sentencing judge stated "for the record that Mr. Vendittelli came in here late, after the trial, took over, and I want to commend him for doing a first rate and very lawyer-like and excellent job on

---

[3]Even under the "best case scenario," adding an additional 400 pounds to the 1865 already attributed to him using the lower estimate, the result would be 2265 pounds, putting Crehore just over the 1000-kilogram level.

behalf of his client . . . acting in the best tradition of lawyers." We simply cannot find any basis to grant habeas relief based on Vendittelli's defense of Crehore during sentencing.

## B. Sixth Circuit Appeal

Venditelli submitted a competent brief to this court on direct appeal. The magistrate judge faulted the brief for not emphasizing the sentencing judge's high estimates of the marijuana loads. Venditelli did not challenge the sentencing judge's estimation of 500, rather than 400, pounds per load in his brief. Rather, he concentrated on the argument that the sentencing judge abused his discretion in not considering the scope of Crehore's agreement to participate in the conspiracy when attributing the loads for sentencing purposes. He chose to emphasize government statements that arguably could have misled the judge into deciding that Crehore had a greater role in the conspiracy than the evidence supported. This was a strategic decision that we may not second-guess. *Campbell*, 260 F.3d at 551. Venditelli also argued that the government double-counted loads, offering an alternative route to the conclusion that Crehore was, in fact, under the 1000-kilogram threshold. Since the 400/500 pound distinction did not determine the outcome, we can find no prejudice to Crehore in its omission, even if we were to hold that not mentioning it fell below a minimum level of competence.

The magistrate judge also found that Vendittelli did not "vigorously challenge" the June 1994 shipment before the Sixth Circuit; the district court disputed that conclusion, however. Crehore's brief to this court refers to the June 1994 shipment:

> Obviously, Mr. Crehore takes issue with the Court's determination that all of the loads mentioned by the Court should be attributed to him. It is interesting to note that the Court started with the load made by Mr. Crehore, which is understandable, however, ended with the load in June of 1994 for 500 pounds. We know Mr.

> Crehore was arrested in January of 1994, yet [sic] sought to attribute 500 pounds of marjuana burned in Mexico . . . . The Court obviously erred in this regard inasmuch as Mr. Crehore should not be responsible for activity beyond his arrest.

Appellant Br., No. 95-1764, at 47. Venditelli argued that the scope of Crehore's agreement extended only to his actual activity that furthered the conspiracy: driving a 400-pound load of marijuana to Detroit in December 1993 and driving an empty motor home back from Michigan in January 1994. *Id.* at 50. Challenging the June 1994 load was therefore tangential to the thrust of Venditelli's attack on Crehore's sentence, and we may not second-guess that strategic decision.

During oral argument, questions were raised about the allegation that Crehore remained in contact with his co-conspirators after his arrest, the premise for attributing the June 1994 load to him. The Assistant United States Attorney sent the court a letter on March 27, 1998 to defend the factual assertions "discussed" at oral argument. Nevertheless, we affirmed Crehore's sentence based on allegations in the government's brief, but not substantiated in the March 27 letter, specifically the supposed "pattern of contemporaneous calls" between Crehore and Free that made it "apparent that he continued to be involved with the conspiracy even after his arrest." *Gaitan-Acevedo*, 148 F.3d at 593. Reliance on these now-discredited facts cannot be attributed to ineffective assistance of counsel.

Crehore argues that Vendittelli was ineffective because he did not respond to the March 27 letter in order to underline the fact that the letter did not substantiate the allegation that Crehore was in contact with Free after his release on bond. Furthermore, Crehore argues, Vendittelli should have pointed out that James Burdick, Free's lawyer, filed an affidavit denying that he, Burdick, had ever spoken with Crehore. In hindsight, this would have been helpful, but it is not clear that the request

to clarify the record was directed to Crehore, who was one of four appellants, whereas the government's letter refers to the court's uncertainty and "attempts to address all of the factual issues raised." Failure to respond to the letter under the circumstances did not fall below the minimal level of professional competence that is needed to trigger a valid ineffective assistance of counsel claim.

Vendittelli unequivocally pointed out the factual discrepancy in Crehore's petition for rehearing, which asserted:

> This panel's failure to review the Lower Court record to substantiate false assertions made regarding Mr. Crehore's participation in the conspiracy by the Government; . . . . [and the fact that] The imposition of Defendant's sentence was based on false information provided by the Government regarding his participation in the conspiracy.

He specifically argued that:

> The Court also falsely relied upon the assertion by the Government that Mr. Crehore had 'extensive contact and association with co-conspirators and . . . a pattern of contemporaneous calls to Free after his release on bond,' and therefore came to the conclusion that it was apparent that Mr. Crehore had continued to be involved in the conspiracy even after his arrest. These statements made by the Government are false. Mr. Crehore had no contemporaneous phone calls with Mr. Free after his release on bond. These allegations again are totally unsupported by the Lower Court record and a further attempt by the Government to sneak into the record false information to make Mr. Crehore look as though he played a greater role in the conspiracy.

The petition for rehearing was denied, after which Venditelli properly applied to withdraw as Crehore's counsel. A thorough review of the record of Venditelli's performance reveals no flaws of constitutional import, and therefore the district court properly denied habeas relief on Crehore's ineffective assistance of counsel claim.[4]

---

[4]We are troubled that the government's erroneous characterization of Crehore's post-arrest contact with Free was not explained to the panel that decided his direct appeal. This panel is not at liberty to revisit that decision, but we feel compelled to point out that "every attorney

–12–

No. 03-1548

## III

For the reasons set forth above, we **AFFIRM** the district court's denial of habeas relief based on its finding that Crehore received effective assistance of counsel both during his sentencing hearing and on direct appeal to this court.

---

has a duty to be completely honest in conducting litigation. . . . [W]hen he departs from that standard[,] . . . he perpetrates fraud upon a court." *Demjanjuk v. Petrovsky*, 10 F.3d 338, 352 (6th Cir. 1994) (quoting in part 7 Moore's Federal Practice ¶ 60.33). The government's "clarification" letter of March 27, 1998 is notably artful in the way it is phrased. However, it is not for us to judge whether the opaque language prevented "the judicial machinery . . . [from] perform[ing] in the usual manner its impartial task of adjudging cases." *Harbold v. Commissioner,* 51 F.3d 618, 622 (6th Cir. 1995). If that were the case, then a fraud would have been perpetrated on this court, and a conceivable remedy would be to petition the original panel to recall the mandate in the direct appeal. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 249-50 (1944); 6 Cir. I.O.P. 4.

In any event, we cannot conclude that a complete miscarriage of justice has occurred in this matter as a result of our unfortunate reliance upon the government's argument that Crehore made numerous post-arrest telephone calls to co-conspirator Free. Clearly, the government's initial representation in this regard was untruthful, or at least unsupported by the appellate record. In its March 27 letter, however, the government did direct the court to specific testimony and evidence adduced at trial to corroborate the assertion that Crehore maintained contact, directly or indirectly, with *other* co-conspirators, even after the petitioner's arrest. That evidence could support the trial court's conclusion that Crehore should also be held accountable for the drugs involved in the June 1994 load.