35 F.3d 63
 UNITED STATES of America, Appellee,
v.
Ibrahim A. EL-GABROWNY, Defendant-Appellant,
Siddig Ibrahim Siddig Ali; Clement Rodney Hampton-El, also
known as Abdul Rashid Abdullah, also known as "Doctor
Rashid"; Amir Abdelgani, also known as Abdou Zaid; Fares
Khallafalla, also known as Abodou Fares; Tarig Elhassan;
Fadil Abdelgani; Mohammed Saleh, also known as Mohammed
Ali; Victor Alvarez; LNU1-93-CR0181-010; Earl Gant, also
known as Abd Rashid, also known as Abd Jalil; Omar Ahmad
Ali Abdel Rahman, also known as Omar Ahmed Ali, also known
as Omar Abdel Al-Rahman, also known as Sheik Rahman, also
known as The Sheik, also known as Sheik Omar; El Sayyid
Nosair, also known as Abu Abdallah, also known as El Sayyid
Abdul Azziz, also known as Victor Noel Jafry; Mohammed
Abouhalima and Abdo Mohammed Haggag, also known as Abdel
Al-Rahman, Defendants.
 No. 1969, Docket 94-1167.
 United States Court of Appeals,
Second Circuit.
 Argued June 20, 1994.
Decided Sept. 8, 1994.
 
 Andrew C. McCarthy, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., S.D.N.Y., Robert S. Khuzami and Alexandra Rebay, Asst. U.S. Attys., of counsel), for appellee.
 Ronald L. Kuby, New York City (Kunstler & Kuby, William M. Kunstler, of counsel), for defendant-appellant.
 Before: VAN GRAAFEILAND, and LEVAL, Circuit Judges, and SWEET, Senior District Judge.*
 PER CURIAM:
 
 
 1
 Ibrahim El-Gabrowny, an indicted defendant awaiting trial, appeals from the orders of the United States District Court for the Southern District of New York, Michael B. Mukasey, J., denying his motion for reconsideration of earlier decisions denying bail. El-Gabrowny raises a due process challenge to his continued pretrial detention pursuant to the Bail Reform Act, 18 U.S.C. Sec. 3142(e). The district judge reaffirmed the continued detention despite the passage of substantial time on the grounds of risk of flight and danger to the community. We affirm.
 
 
 2
 On March 4, 1993, law enforcement officers went to El-Gabrowny's residence to execute a search warrant in the investigation of the February 26, 1993, World Trade Center bombing. According to the district court's findings, El-Gabrowny assaulted and obstructed these officers. He was then arrested. At the time, El-Gabrowny was found to have on his person five fraudulent Nicaraguan passports and corresponding birth certificates.
 
 
 3
 Also at the time of his arrest, El-Gabrowny asked to use the bathroom. He had been ordered not to wash his hands. This was because the agents intended to test his hands for traces of chemicals that might link him to the bombing of the World Trade Center. While using the bathroom, El-Gabrowny plunged his hands into the toilet bowl, thus exposing them to uric acid and frustrating the ability to test for pre-existing traces.
 
 
 4
 At a detention hearing the following day, Judge Richard Owen, sitting in Part 1, found that the defendant presented both a risk of flight and a danger to the community, based primarily on El-Gabrowny's possession of numerous forged passports, his obstruction of justice and his assaults on law enforcement officers. Judge Owen ordered pretrial detention without bail.
 
 
 5
 On March 17, 1993, a Grand Jury sitting in the Southern District of New York indicted El-Gabrowny on several counts, including obstruction of justice, assault on a federal officer, interference with the execution of a search warrant, and possession of fraudulent passports. On July 14, 1993, and August 25, 1993, the Grand Jury returned superseding indictments which charged El-Gabrowny and co-defendants with conspiracy to levy war against the United States, bombing conspiracy, and the use and carrying of destructive devices during and in relation to crimes of violence.
 
 
 6
 El-Gabrowny then filed several bail motions seeking release from custody. On December 30, 1993, Judge Mukasey reaffirmed Judge Owen's previous findings of dangerousness and risk of flight and found insufficient change in circumstances to justify release. The court noted, too, the gravity of the charges asserted in the superseding indictments.
 
 
 7
 The defendant moved for reconsideration on January 11, 1994, and the district court denied the motion. On the same date, in response to a request from other defendants' counsel for an extension in the motions deadline, the district court granted the extension and set the trial date for September 19, 1994. El-Gabrowny opposed the extension and the adjournment of the trial date, and on January 13, 1994, moved to sever his case from that of his co-defendants. The motion was denied. Finally, on March 9, 1994, El-Gabrowny again pursued a motion for reconsideration of the decision denying bail; Judge Mukasey again denied the motion.
 
 Discussion
 
 8
 El-Gabrowny contends his continued detention offends due process of law. Due process analysis of pretrial detention calls for examination of the length of detention, the extent of the prosecution's responsibility for delay of the trial, the gravity of the charges, and the strength of evidence upon which detention was based, i.e., the evidence concerning the risk of flight and danger to the safety of others. See United States v. Millan, 4 F.3d 1038, 1043 (2d Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1375, 128 L.Ed.2d 51 (1994); United States v. Orena, 986 F.2d 628, 630 (2d Cir.1993).
 
 
 9
 El-Gabrowny's detention has now continued eighteen months, will extend one more before trial begins, and was projected by the district court to last a total of twenty-seven months before conclusion of the expected lengthy trial. This is unquestionably a long duration. However, "the length of a detention period will rarely by itself offend due process." Id. at 631. No particular time period marks the constitutional limit of pretrial detention; each case must be examined on its own facts. United States v. Gonzales Claudio, 806 F.2d 334, 340 (2d Cir.1986).
 
 
 10
 El-Gabrowny seeks to place the responsibility for the delay on the prosecution. His position is strengthened by his application for severance, which the government opposed and the court denied. On the other hand, the importance and complexity of the case and the extensive evidence, including numerous tapes in Arabic, reasonably require a lengthy period for pretrial preparation. The government also reasonably asserts that it should not be required to try such a lengthy case twice and that its overall case would be prejudiced if it were required to expose its evidence in a preview trial.
 
 
 11
 The government points out, furthermore, that El-Gabrowny made no objections to delays sought by his co-defendants that resulted in a September 1994 trial date.
 
 
 12
 The charges levied against him by grand jury indictment are extraordinarily serious and indicate a grand jury finding of a high degree of dangerousness. See United States v. Contreras, 776 F.2d 51 (2d Cir.1985); see also United States v. Orena, 986 F.2d 628 (2d Cir.1993). If convicted of the crimes of which he is accused, the defendant will face a probable very lengthy term of imprisonment. This prospect gives him a great incentive to flee, and his possession of forged passports indicates inclination to contemplate flight.
 
 
 13
 These factors, taken together, justify continued detention, especially in view of the fact that the trial is scheduled to start within a month's time. Needless to say, if the trial is substantially delayed, El-Gabrowny may renew his motion in the district court; this opinion does not intend to suggest that his pretrial detention may continue indefinitely. And in the event of a substantial further delay, the government may be required to make a more convincing showing of his dangerousness and/or risk of flight.
 
 Conclusion
 
 14
 We find no abuse of discretion in the district court's denial of El-Gabrowny's motion for release and no violation of the Constitution in his lengthy pretrial detention. Affirmed.
 
 
 
 *
 The Honorable Robert W. Sweet, United States Senior District Judge for the Southern District of New York, sitting by designation