IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 17, 2010

Charles R. Fulbruge III
Clerk

No. 10-20012
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ROBERT ALLEN STANFORD, also known as Sir Allen Stanford, also known
as Allen Stanford,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CR-342-1

Before KING, STEWART, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Robert Allen Stanford appeals the district court's denial of his "Motion to
Reconsider and/or Reopen the District Court's Detention Order due to Changed
Circumstances."  For the following reasons, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts concerning the indictment of Robert Allen Stanford ("Stanford") and the district court's initial detention decisions are discussed more fully in our previous opinion. See United States v. Stanford, 341 F. App'x 979 (5th Cir. 2009) (per curiam).

A federal grand jury returned a twenty-one count indictment against Stanford and four co-defendants on June 18, 2009. In essence, the indictment charges that Stanford and his co-defendants operated a "Ponzi scheme" in which they marketed and sold certificates of deposit to investors. These certificates of deposit provided consistently high profits to investors, but, in actuality, these profits were largely transfers from the funds of other investors.

On June 25, 2009, a magistrate judge held a detention hearing, determining that "there is a risk of flight for Mr. Stanford" but concluding that Stanford could be released pending trial, with the imposition of appropriate bail conditions. The magistrate judge's release order required that Stanford secure a $500,000 bond, make a $100,000 deposit, and adhere to travel and custodial limitations. The Government moved for a review of this order by the district court.

After a hearing on June 29, 2009, the district court reversed the magistrate judge's release order and remanded Stanford to custody. The district court based this decision on nineteen findings of fact, including the findings that Stanford poses a "serious flight risk" and that "there is no condition or combination of conditions of pretrial release that will reasonably assure his appearance at trial." On July 7, 2009, Stanford moved for the district court to reconsider or reopen this detention order, claiming that he had newly discovered information that would bear on the detention decision. The district court denied this motion, and Stanford appealed.

On appeal, we determined that the record supported the district court's factual findings and that the district court did not abuse its discretion in concluding that the relevant factors weighed in favor of detention. We also determined that the district court did not abuse its discretion in denying Stanford's motion to reconsider or reopen the detention hearing because the information Stanford sought to present was not new. On this point, we noted that Stanford was given "numerous opportunities to call witnesses before the district court," "declined to do [so]," and "never asked for more time to locate witnesses." Stanford, 341 F. App'x at 984. Further, we noted that most of the "friends, family, and former employees" who Stanford claimed could provide new information "were present during the district court hearing," and thus we could not say "that their testimony was newly discovered or previously unavailable." Id.

On December 21, 2009, Stanford again moved to reconsider or reopen the district court's detention order due to changed circumstances (the "Motion to Reconsider"). Specifically, Stanford claimed that, because of his declining physical and mental conditions in custody, family members and other supporters had "recently pledged" to assist him in hiring "armed off-duty peace offices to guard him 24 hours a day/seven days a week" in order to ensure his appearance at court proceedings. Stanford claimed that the Chief Deputy Constable of Fort Bend County had agreed to provide off-duty, licensed, armed peace officers to guard him. The Chief Deputy Constable also prepared a report that detailed how Stanford's dwelling could be secured and outlined procedures that could be implemented to ensure Stanford's appearance at future court proceedings.

The district court denied Stanford's Motion to Reconsider on December 23, 2009, stating that "[h]aving considered the motion along with the exhibits attached thereto, and the applicable law, the Court determines the motion

should be denied." Stanford then moved for written reasons explaining this decision on January 6, 2010; the district court denied this motion on January 8, 2010, finding that:

> the motion [for reconsideration] raises no new circumstances material to the Court's earlier determination that Stanford poses a significant flight risk for which no condition or combination of conditions of pretrial release will reasonably assure his presence at trial—a determination for which the Court issued specific reasoning in its June 30, 2009 detention order.

Stanford appeals.

## DISCUSSION

"Absent an error of law, we must uphold a district court's pretrial detention order if it is supported by the proceedings below, a deferential standard of review that we equate to the abuse-of-discretion standard." United States v. Hare, 873 F.2d 796, 798 (5th Cir. 1989) (internal quotation marks omitted). We review a district court's ruling on a motion to reopen a detention hearing under 18 U.S.C. § 3142(f) using this same abuse-of-discretion standard. Id.; Stanford, 341 F. App'x at 981. The Bail Reform Act provides in relevant part that:

> [t]he hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required . . . .

18 U.S.C. § 3142(f)(2)(B); Stanford, 341 F. App'x at 984. We have also interpreted this standard as asking whether any "new" information was presented. Hare, 873 F.2d at 799 ("We agree with the district court that the testimony of Hare's family and friends is not new evidence."); Stanford, 341 F. App'x at 984 ("It cannot therefore be said that [the witnesses'] testimony was newly discovered or previously unavailable.").

4

Here, Stanford argues that the information he presented regarding the feasibility and effectiveness of armed, home detention was not previously known and necessitates reconsideration of the district court's detention order. Specifically, Stanford urges that his friends and family are only now willing to pay for this service because of the difficulties he has faced while in custody. Further, Stanford argues that his plan for detention is material because similar detention plans have been used in other notable white collar cases to ensure that the defendant appears for court proceedings.

The Government argues, inter alia, that the information regarding the feasibility and effectiveness of armed, home detention is not new and was previously known by Stanford at the time of his detention. Accordingly, the Government argues that the district court did not abuse its discretion in denying Stanford's Motion to Reconsider. We agree.

While it is true that Stanford's plan for armed, home detention was not previously presented to the district court, much of the information that Stanford now claims is "new" was previously presented. Specifically, evidence concerning Stanford's access to funds was presented;[1] the willingness of Stanford's acquaintances to provide financial support to him was discussed;[2] at-home

---

[1] The district court found that in 2008 Stanford was listed in Forbes as having a net worth over $2 billion (Detention Order, R. 431 ¶ 2); that forensic accountants working for the receiver of Stanford's companies has been unable to account for over $1 billion (Id. ¶ 4); and that that a large sum of money had been withdrawn from an overseas bank account. (Id. at 431–32). We noted these findings in our previous opinion. See Stanford, 341 F. App'x at 983 ("Stanford's financial resources and international network also support the district court's detention determination. While Stanford argues that his assets have been frozen, only a fraction of his wealth has been accounted for and at least one secret bank account has been uncovered. Furthermore, he has demonstrated an ability to raise funds from other sources.").

[2] Specifically, the district court found that "[i]t is clear that Stanford has numerous international business contacts" (Detention Order, R. 434 ¶ 16) and that "Stanford's acquaintances have shown a willingness to provide him with financial support" (Id. ¶ 17). Further, many of Stanford's supporters appeared at his detention hearings. (See, e.g., Magistrate Judge Bail Hearing Transcript, R. 392 ("[Counsel for Stanford]: I just want to list

detention—including, inter alia, the use of GPS, custodial, and pretrial services monitoring—was considered;[3] information about the difficulties Stanford faced while in custody was presented;[4] and bail conditions in other notable white collar cases was discussed.[5] Accordingly, we cannot say that the information Stanford presented regarding his plan for home detention under armed guard was unknown to him at the time of the detention hearing. Thus, the district court

---

a few of the people that are here, friends and family, in support of him. [Counsel recites seventeen individual's names and their relationship to Stanford].").) We also discussed these findings in our previous opinion. See Stanford, 341 F. App'x at 983 ("Stanford also maintains numerous international contacts and, as previously discussed, regularly travels abroad.").

[3] The hearing before the magistrate, which was incorporated by the district court at its hearing, reveals that several conditions of bail were discussed. Specifically, the magistrate judge required that: (1) Stanford live with his girlfriend; (2) Stanford's girlfriend act as his custodian; (3) Stanford submit to a GPS monitoring program, including bearing the costs of such a program if necessary; and (4) Stanford be restricted to his residence "except for employment, education, religious services, medical substance abuse or mental health treatment, attorney visits, court appearances, court-ordered obligations, or other activities preapproved by the Pretrial Service Office . . . ." (Magistrate Judge Bail Hearing Transcript, R. 409–23.)

[4] The district court considered, on several occasions, Stanford's argument that custody made it difficult for him to prepare an effective defense. (See, e.g., Request for a Prompt Response on Stanford's Motion to Reconsider the Detention Order, R. 1149 ¶ 2 ("The circumstances of Allen Stanford's incarceration are draconian and prohibit effective and meaningful consultation with his lawyers."); Order Denying Motion to Transfer Stanford (denying Stanford's motion for a transfer to the downtown Houston correctional center in which Stanford argued the transfer would aid him in the preparation of his defense).) Stanford also previously argued that he was suffering from stress imposed by his transfer to custody. (Id. at 394.)

[5] On several occasions, Stanford compared himself to other white collar defendants who had been released with bail conditions. (See, e.g., Stanford's Second Memorandum in Support of his Right to Pretrial Release, R. 156 n.5 (citing United States v. Madoff, United States v. Lay, and United States v. Skilling); District Court Bail Hearing Transcript, R. 477–78 (colloquy between district judge and Stanford's attorney as to how Stanford is differentiable from other high-profile white collar defendants).) We also discussed the differences between Stanford and other white collar defendants in our previous opinion. See Stanford, 341 F. App'x at 982 ("[Stanford asserts] that other white collar defendants have been released on bond. Stanford's comparison with other defendants does nothing to undermine the district court's analysis and is unavailing in any event. The district court considered other white collar cases and discarded the comparison as inapplicable.")

did not err in finding that Stanford presented no new circumstances in his Motion to Reconsider, and the district court did not abuse its discretion in denying Stanford's motion. See Stanford, 341 F. App'x at 984 (concluding that where information could have been presented at the earlier detention hearing it was not "new" and the district court thus did not abuse its discretion in declining to reopen the detention hearing).

Alternatively, Stanford argues that the district court failed to provide sufficient reasons for its decision under Rule 9(a) of the Federal Rules of Appellate Procedure[6] and that we should order the district court to provide reasons for denying Stanford's Motion to Reconsider. The Government argues that Rule 9(a) does not apply to an order denying a motion to reopen or reconsider and that, in any event, the district court complied with Rule 9(a) here. Pretermitting any discussion whether the requirements of Rule 9(a) apply to a district court's order denying a motion to reopen or reconsider, we conclude that the district court, by stating that it found that Stanford's motion raised "no new circumstances material to the Court's earlier determination," complied with the requirements of Rule 9(a) here.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Stanford's Motion to Reconsider.

AFFIRMED.

---

[6] Rule 9(a) provides, in relevant part, that "[t]he district court must state in writing, or orally on the record, the reasons for an order regarding the release or detention of a defendant in a criminal case." FED. R. APP. P. 9(a)(1).