**UNITED STATES of America,**

v.

**Robert Allen STANFORD.**

**Criminal Action No. H–09–342–1.**

United States District Court,
S.D. Texas,
Houston Division.

July 7, 2010.

See also 341 Fed.Appx. 979.

Gregg Costa, Office of the U.S. Attorney, Houston, TX, Paul Pelletier, Jackie B. Patrick, United States Department of Justice, Washington, DC, for United States of America.

Robert S. Bennett, Bennett Law Firm, Houston, TX, for Defendant Robert Allen Stanford.

## ORDER

DAVID HITTNER, District Judge.

Pending before the Court is Defendant Robert Allen Stanford's Motion for Release from Detention or Dismissal of the Indictment Based on Violations of the Due Process Clause of the Fifth Amendment and the Sixth and Eighth Amendments to the United States Constitution. Having considered the motion, submissions, and applicable law, the Court determines the motion should be denied.

## BACKGROUND

On June 18, 2009, a federal grand jury in the Southern District of Texas returned a twenty-one count indictment against Defendant Robert Allen Stanford ("Stanford"), Chairman of the Board of Directors of Stanford International Bank, Ltd. ("SIBL"), and four co-defendants. The indictment alleges that Stanford, in controlling Stanford Financial Group and its affiliated companies—including SIBL, conspired to commit and did commit mail fraud and wire fraud, conspired to commit securities fraud and money laundering, and conspired to obstruct and did obstruct a Securities Exchange Commission investigation.

On June 30, 2009, after a hearing at which the Court received evidence, including the complete transcript of the magistrate judge's detention hearing, and heard argument from counsel, the Court determined that Stanford is a serious flight risk and there is no condition or combination of conditions of pretrial release that will reasonably assure his appearance as required for trial. Thus the Court ordered Stanford detained pending trial.

Stanford now, once again, seeks to be released from pretrial detention and asserts various reasons why the Court should grant his release. This is well trodden ground. Twice previously the Court denied Stanford's request for release and the United States Court of Appeals for the Fifth Circuit affirmed those rulings. *See United States v. Stanford,* 630 F.Supp.2d 751, 756–57 (S.D.Tex.2009); *see also United States v. Stanford,* 367 Fed.Appx. 507, 512 (5th Cir.2010) (affirming this Court's denial of Stanford's motion to reconsider and reopen the detention order); *United States v. Stanford,* 341 Fed.Appx. 979, 984 (5th Cir.2009) (affirming this Court's detention order). Nevertheless, Stanford now contends that his continued detention violates his constitutional right to due process. Stanford does not seek to reopen his detention proceedings to challenge his continued detention under the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.* Rather, this time Stanford challenges his

continued detention directly on constitutional grounds; he contends that he is being deprived of his Fifth, Sixth, and Eighth Amendment rights. Specifically, Stanford argues that because of its duration, his pretrial detention runs afoul of the Fifth Amendment's due process guarantee, deprives him of his Sixth Amendment right to the effective assistance of counsel due to the difficulty of reviewing documents and meeting with his attorneys at his place of confinement, and offends the Eighth Amendment's guarantee against excessive bail. Thus, the Court will once again address Stanford's pretrial detention this time focusing on his due process and constitutional claims.

### LAW & ANALYSIS

■ Courts may order a defendant detained pretrial consistent with the Due Process Clause of the Fifth Amendment as long as that detention is not "punishment of the detainee." *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *see also United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). "Absent an expressed intention to punish, whether detention constitutes impermissible punishment or permissible regulation turns on whether the government has a nonpunitive reason for detention and whether detention 'appears excessive in relation to' the nonpunitive purpose." *United States v. Millan,* 4 F.3d 1038, 1043 (2d Cir.1993) (quoting *Wolfish,* 441 U.S. at 538, 99 S.Ct. 1861). Pretrial detention to prevent flight from the jurisdiction is an important, nonpunitive, regulatory purpose. *Salerno,* 481 U.S. at 749, 107 S.Ct. 2095; *Millan,* 4 F.3d at 1043; *United States v. Gonzales Claudio,* 806 F.2d 334, 338 (2d Cir.1986). But "excessively prolonged" detention may become so

unreasonable in relation to the regulatory goals of detention that it violates due process. *Salerno,* 481 U.S. at 747 & n. 4, 107 S.Ct. 2095; *United States v. Hare,* 873 F.2d 796, 800–01 (5th Cir.1989).

■ Stanford argues that his pretrial detention has reached that point at which it has become "excessively prolonged, and therefore punitive, in relation to Congress'[s] regulatory goal."[1] *See Salerno,* 481 U.S. at 747 n. 4, 107 S.Ct. 2095. Thus, he contends his continued pretrial detention violates his right to due process. Due process challenges to pretrial detention must be assessed "on a case-by-case basis." *Hare,* 873 F.2d at 801. According to the Fifth Circuit,

> In determining whether due process has been violated, a court must consider not only factors relevant in the initial detention decision, such as the seriousness of the charges, the strength of the government's proof that the defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits, but also additional factors such as [1] the length of the detention that has in fact occurred or may occur in the future, [2] the non-speculative nature of future detention, [3] the complexity of the case, and [4] whether the strategy of one side or the other occasions the delay.

*Id.* The Court, in its initial detention order, carefully examined the evidence—including the seriousness of the charges, the risk of flight, and the weight of the United States' evidence—and thoroughly detailed the reasons for Stanford's pretrial detention—"Stanford is a serious flight risk and there is no condition or combination of conditions of pretrial release that will reasonably assure his appearance as required

---

1. Stanford asserts in his motion, "[T]here is also the appearance of punishment before trial as a means of appeasing investors who subjectively believe that Mr. Stanford is personally responsible for their losses." But he offers absolutely no evidence to support this assertion.

for trial," *Stanford,* 630 F.Supp.2d at 756–57—and the Fifth Circuit upheld the Court's findings. *Stanford,* 341 Fed.Appx. at 984. The Court need not re-hash them here. *Accord United States v. Daniels,* No. 06–20234, 2008 WL 324123, at *4 (E.D.Mich. Feb. 6, 2008) (relying on earlier determination of flight risk). Moreover, the Fifth Circuit affirmed this Court's denial of Stanford's motion to reconsider or reopen the detention order and rejected Stanford's argument that there were conditions of release that would assure his appearance at trial. *Stanford,* 367 Fed. Appx. at 510. To the extent that Stanford's most recent motion simply re-urges the same arguments he made in his previous attempts to obtain release from pretrial detention, the Court rejects those arguments and denies relief on those grounds. But to those constitutional and due process arguments that fit within the additional factors stated in *Hare,* the Court now turns.[2]

## I. DUE PROCESS AND THE *HARE* FACTORS

### 1. Length of Detention

 The first of those additional factors is the length of the detention that has in fact occurred or may occur in the future. *Hare,* 873 F.2d at 801. Stanford complains that his detention, which now has been twelve months and will have been nineteen months when this case goes to trial, violates his due process rights. Although the length of pretrial detention is one factor courts are to consider, it alone is not dispositive and carries no fixed weight in a due process analysis. *See Millan,* 4 F.3d at 1044; *United States v. Fisher,* Crim. No. 08CR–0205–01, 2009 WL 585846, at *3 (W.D.La. Mar. 5, 2009); *United States v. Flores,* Crim. No. 06–60050–01, 2007 WL 4553965, *2 (W.D.La. Dec. 18, 2007) (citing *United States v. Zannino,* 798 F.2d 544, 548–49 (1st Cir.1986)). Indeed, length of detention "will rarely by

**2.** Stanford contends that "the Court is required to consider the flight issue—indeed, all the issues—based on Mr. Stanford's *current* and likely future status and cannot simply rely on the findings it made nearly eleven months ago." But Stanford cites no authority for this proposition. Presumably, Stanford relies upon *Hare* for this assertion. But that is not what *Hare* holds. In addition to "find[ing] that the due-process limit on the duration of preventive detention requires assessment on a case-by-case basis," the *Hare* court directed that "[i]n determining whether due process has been violated, a court must consider not only factors relevant in the initial detention decision, such as risk of flight ... but also" the additional factors listed above. *Hare,* 873 F.2d at 801. The *Hare* court did not hold that the trial court must re-consider the factors underlying its initial flight risk determination based on the defendant's *current* and likely future status. *See id.* The Court has thoroughly analyzed these factors previously—twice—and those findings were affirmed by the Fifth Circuit. *See Stanford,* 630 F.Supp.2d at 756–57; *see also Stanford,* 367 Fed.Appx. at 510–11; *Stanford,* 341 Fed.Appx. at 984. Nevertheless, even if the Court were

to reconsider the flight risk determination, the Court finds nothing in Stanford's recent motion that overcomes the United States' evidence that Stanford is a serious risk to flee. Indeed, the Court's earlier determination is strengthened by the United States' latest submission. Consequently, the Court need not reconsider the factors made the basis of that determination. *Accord Daniels,* 2008 WL 324123, at *4. It is true, as Stanford points out, that in remanding the *Hare* case the Fifth Circuit stated that "Hare may present to the court any condition he is willing to abide by if he is released." *Hare,* 873 F.2d at 801. But the court did not direct that the lower court must consider anew each element of its detention determination. Furthermore, the conditions by which Stanford asserts he is willing to abide if released have been considered and rejected. *See Stanford,* 367 Fed.Appx. at 511 & n. 3. Moreover, these are conditions which "can be circumvented," and they only "at best 'elaborately replicate a detention facility without the confidence of security such a facility instills.'" *Millan,* 4 F.3d at 1049 (quoting *United States v. Orena,* 986 F.2d 628, 632 (2d Cir.1993); *United States v. Gotti,* 776 F.Supp. 666, 672 (E.D.N.Y.1991)).

itself offend due process." *Orena*, 986 F.2d at 631. So Stanford's contention that his pretrial detention violates his due process rights simply because it will have been nineteen months by the time his trial begins is unpersuasive.

Moreover, the United States Supreme Court in *Salerno* made certain to note that it "intimate[d] no view as to the point at which detention in a particular case might become excessively prolonged, and there-fore punitive, in relation to Congress'[s] regulatory goal." *Salerno*, 481 U.S. at 748 n. 4, 107 S.Ct. 2095. The Fifth Circuit in *Hare* directed only that the determination must be made on a case-by-case basis, providing no specific guidance on what length of pretrial duration would rise to the level of a due process violation. *Hare*, 873 F.2d at 801. Stanford cites no Fifth Circuit case in which the duration of pre-trial detention violated due process.[3]

3. The cases Stanford cites as support for his proposition that the twelve to nineteen month duration of his pretrial detention violates his due process rights are readily distinguishable from the facts in this case. As an initial matter, in each case the determination was made utilizing factors different from what the Court is compelled to use here under *Hare*. But there are other significant differences.

In *United States v. Ojeda Rios*, for example, the defendant had been detained awaiting trial for over thirty-two months and, as the court noted, the government was responsible for the delay given its "relucntan[ce] to agree to a severance." *United States v. Ojeda Rios*, 846 F.2d 167, 168–69 (2d Cir.1988).

*United States v. Gonzales Claudio* is also unpersuasive. See *Gonzales Claudio*, 806 F.2d at 342. In that case the defendants were facing potential pretrial detention of twenty-two months. *Id.* The court noted that prose-cutorial delay—including the government's delay in disclosing the existence of certain evidence—was "significant enough to add considerable weight to the defendants' claim that the duration of detention has exceeded constitutional limits." *Id.* at 342–43. As the Court explains, that is not the case here.

*United States v. Theron* is also unhelpful because there the United States Court of Ap-peals for the Tenth Circuit relied upon statu-tory grounds in concluding that a *four month pretrial detention was unlawful for a defendant denied* a severance from co-defendants. *Unit-ed States v. Theron*, 782 F.2d 1510, 1515 (10th Cir.1986). There the court found that the "reasonable period of delay" under 18 U.S.C. § 3161(h)(7), where a defendant is denied severance from those for whom the time for trial has not run, is to be construed more strictly in determining the allowable length of pretrial detention under 18 U.S.C. § 3164(b) than in determining the allowable time for the required start of trial. *Id.* That finding is inapplicable here.

The district court cases Stanford cites are also unpersuasive on this issue. The defen-dant in *United States v. Ailemen* had been detained for twenty-six months. *United States v. Ailemen*, 165 F.R.D. 571, 589 (N.D.Cal. 1996). Moreover, as the court noted, it did not have jurisdiction of the case at the time and, consequently, "simply [did] not know how long it [would] be" before the circuit court remanded the case for trial. *Id.* at 590. Consequently, the court determined that the defendant would likely be in detention for at least thirty-five months before trial. *Id.* That, coupled with significant prosecutorial delay, compelled the court's conclusion that Ailemen must be released from detention on due pro-cess grounds. *Id.* at 592.

Nor is *United States v. Shareef*, 907 F.Supp. 1481 (D.Kan.1995), helpful. In that case, the district court reopened the detention hearing under 18 U.S.C. § 3142(f) and determined that Shareef must be released from detention because, although he had been detained only nine months, he faced only eighteen to twen-ty-four months imprisonment if convicted. *Id.* at 1484. More importantly, the court not-ed that the evidence upon which the initial detention order was based had been sup-pressed by the trial judge, and therefore "[t]here is no evidence at this time upon which the government can obtain a convic-tion." *Id.* at 1485.

Stanford's argument finds no support in *United States v. Chen*, 820 F.Supp. 1205 (N.D.Cal.1992). In *Chen*, the defendants had been detained "a few days short of an entire year [with] no end in sight to this 'administra-tive' detention." *Id.* at 1210. Moreover, the court explained that the length of the deten-tion was exacerbated by significant prosecuto-

Other courts across the nation have found that pretrial detention periods of much more than nineteen months do not violate due process. *See, e.g., United States v. El–Hage*, 213 F.3d 74, 77–79 (2d Cir. 2000) (finding thirty to thirty-three month detention did not violate due process); *Millan*, 4 F.3d at 1049 (finding expected detention of thirty months did not violate due process); *United States v. El–Gabrowny*, 35 F.3d 63, 65 (2d Cir.1994) (finding twenty-seven month detention did not violate due process); *United States v. Landron–Class*, 705 F.Supp.2d 154, 156–57 (D.P.R.2010) (finding twenty-nine month pretrial detention did not offend due process); *United States v. McCarty*, No. CR. 08–00513 JMS, 2009 WL 5061577, at *4–5 (D.Haw. Dec. 24, 2009) (finding no due process violation where "Defendant has been detained for almost 17 months, and he will continue to be detained for several more months"); *United States v. Telfair*, Crim. A. No. 08–CR–0757, 2008 WL 5188846, at *4 (D.N.J. Dec. 10, 2008) ("[T]wenty-two month pre-trial detention does not rise to the level of a due process violation."); *United States v. Miller*, No. 06–40151–JAR, 2008 WL 2783146, at *2 (D.Kan. July 15, 2008) (finding seventeen months did not violate due process); *United States v. Cos*, No. CR 05–1619 JB, 2006 WL 4061168, at *11 (D.N.M. Nov. 15, 2006) ("Nor does the Court think that

nineteen months will push this case into [the category of cases in which the length of detention has reached the point where] only an extraordinary showing of flight risk or danger to the community will justify continued detention."). Here then, in light of these decisions, it cannot be said that Stanford's detention to this point has crossed the line from serving its regulatory purpose—which is securing Stanford's appearance against the real risk that he would flee the Court's jurisdiction—to serving some alleged punitive purpose simply because it has extended to twelve months. Absent any prosecutorial delay or extended speculative detention, which the Court discusses below, the length of Stanford's pretrial detention to this point does not offend due process. *See, e.g., El–Hage*, 213 F.3d at 77–79; *El–Gabrowny*, 35 F.3d at 65; *Cos*, 2006 WL 4061168, at *11.

### 2. Non–Speculative Nature of Future Detention

Second, the Court must consider the nature of any future detention and whether it is speculative. *Hare*, 873 F.2d at 801. Here, the length of any future pretrial detention is not speculative, it is certain. *See, e.g., Fisher*, 2009 WL 585846, at *3. The trial is set to begin on January 24, 2011, a date set during an initial status conference after conferring with counsel

---

rial delay. *Id.* And, just as in Shareef, since the initial bail determination much of the government's evidence had been suppressed, significantly weakening the strength of the government's case. *Id.* at 1209.

*United States v. Gatto*, 750 F.Supp. 664 (D.N.J.1990), is distinguishable for the same reasons. There, the defendant had been detained pretrial based on dangerousness and faced eighteen to twenty-one months before trial. *Id.* The court ordered Gatto released on bond because "actions of the government have worked to delay the trial action" and because since the initial detention hearing "[a]fter further acquaintance with the govern-

ment's case and upon further reflection, the strength of the government's case on the merits appears much weaker." *Id.* at 674–75.

Finally, *United States v. Gallo*, 653 F.Supp. 320 (E.D.N.Y.1986), is also unpersuasive. There, the court found that the defendant should be released because, among other reasons, the defendant had been detained because of threats made to a witness in the case, "the danger to the witness is not appreciably reduced by incarceration of the defendants[, and] the witness may be profiting financially from the defendants' incarceration," *id.* at 345—issues not applicable whatsoever in this case.

for Stanford and for the United States. *See id.* Moreover, because the Court has severed the co-defendants and Stanford will thus be tried alone, the length of the trial should be shorter than Stanford contends. The future of Stanford's pretrial detention is not speculative; the trial will commence January, 2011. Added to the time Stanford has been detained to this point, the total length of pretrial detention should be approximately nineteen months, which as the Court has explained, is well less than those periods of detention that other courts across the country have determined not to be violative of the Due Process Clause. *See, e.g., El–Hage,* 213 F.3d at 77–79; *Millan,* 4 F.3d at 1049; *El–Gabrowny,* 35 F.3d at 65; *Cos,* 2006 WL 4061168, at *11. It therefore does not violate Stanford's rights to due process.

### 3. Complexity of Case

■ Next, the Court must consider the complexity of the case and the time required to prepare for trial. *Hare,* 873 F.2d at 801. When the complexity of a case is a reason for the length of the detention, the detention continues to be regulatory in nature rather than penal. *See Hare,* 873 F.2d at 801. And "the application of the complex-trial exception to the Speedy Trial Act does not by itself change the regulatory nature of pretrial detention." *Id.* This certainly is a complex case, and the Court and the parties acknowledge it at as such. In fact, Stanford waived his rights under the Speedy Trial Act and, more importantly, sought a continuance, which the Court granted because the case is "so complex that it is unreasonable to expect adequate preparation for

pretrial proceedings or for the trial itself within the time limits set out by the Speedy Trial Act." *United States v. Stanford,* Crim. No. 09–342 (S.D.Tex. July 16, 2009) (order granting continuance). The complexity of this case has necessitated a lengthier pretrial period, which Stanford has acknowledged and, indeed, sought. *See* Transcript of Scheduling Conference at 23, *United States v. Stanford,* Crim. No. 09–342 (S.D.Tex. Dec. 17, 2009).[4] This factor weighs against Stanford's due process claim.

### 4. Trial Strategy Occasioning Delay

■ Fourth, in due process challenges to pretrial detention, *Hare* directs courts to inquire into the source of any delay in reaching trial. *Hare,* 873 F.2d at 801. Any delay occasioned by prosecutorial strategy may be a basis upon which an exceedingly lengthy pretrial detention offends due process. *See Millan,* 4 F.3d at 1044–45; *Ojeda Rios,* 846 F.2d at 168–69. But delays caused by the defendant do not raise due process problems. *Theron,* 782 F.2d at 1516 (cited with approval in *Hare,* 873 F.2d at 801 n. 24). Here, it can not be reasonably argued that the United States has occasioned any delay in this case, and Stanford points to no conduct by the United States that may be responsible for the duration of his detention. Indeed, the United States sought a speedy trial and represented to the Court on several occasions that it would be prepared to try the case as soon as September, 2010. *See* Transcript of Scheduling Conference at 23, *United States v. Stanford,* Crim. No. 9–342 (Dec. 17, 2009). In fact, at the December 17, 2009 scheduling conference, Stanford

---

4. THE COURT: What date? [The Government] suggest[s] next September. What date do you suggest?
MR. SCHAFFER: Well, we're thinking 18 months from now, beginning with summer.
THE COURT: Beginning next summer?
MR SCHAFFER: Yes, your Honor.

THE COURT: 2011?
MR. SCHAFFER: Yes, sir.
Transcript of Scheduling Conference at 23, *United States v. Stanford,* Crim. No. 09–342 (Dec. 17, 2009). Mr. Schaffer was Stanford's attorney at the time.

sought a trial date eighteen months from that time—summer of 2011. *Id.* Nothing the United States has done to this point is responsible for any delay in trial or any extension of Stanford's pretrial detention.

In sum, a thorough analysis of the *Hare* factors applied to this case compel the Court's determination that Stanford's pretrial detention does not offend due process. Consequently, the Court determines that Stanford's motion for release on those grounds should be denied.

## II. Sixth and Eighth Amendment Challenges

■ The balance of Stanford's arguments were subsumed in his previous attempts at release—which this Court and the Fifth Circuit rejected—and are otherwise without merit. *See Stanford,* 630 F.Supp.2d at 756–57; *see also Stanford,* 367 Fed.Appx. at 512; *Stanford,* 341 Fed. Appx. at 984. For instance, Stanford once again contends that his continued detention violates his Sixth Amendment right to prepare for trial with assistance of counsel. The Court considered this argument once before, rejected it, and the Court's ruling was affirmed by the Fifth Circuit. *Stanford,* 367 Fed.Appx. at 511 n. 3. Furthermore, the evidence before the Court makes it clear that Stanford has had ample access to his attorneys and the discovery in this case from his place of confinement. His contrary contentions are unpersuasive given the evidence of the extent to which the United States and the Federal Bureau of Prisons has accommodated all of his previous attorneys and his needs to access the documents relative to his defense.

In a similar case in which the defendant was charged with execution "of perhaps the largest fraud scheme ever perpetrated in Minnesota, and one of the largest in this country's history," a district court in Minnesota found these same arguments "unpersuasive, for several reasons." *United States v. Petters,* Crim. No. 08–364 (RHK/AJB), 2009 WL 205188, at *1 (D.Minn. Jan. 28, 2009). First, that court noted, albeit in the context of a challenge to detention under 18 U.S.C. § 3142(f), that "the difficulties Defendant might encounter in preparing for trial have absolutely nothing to do with whether he is a risk of flight ... in other words, those alleged difficulties do not have a 'substantial bearing on whether he should remain detained.'" *Id.* at *2. That same reasoning applies here in this context.

More importantly, though, Stanford couches his argument regarding the difficulties in preparing for trial as a due process challenge. But as the Minnesota court pointed out in *Petters,* the cases involving a due process challenge to pretrial detention have focused solely upon the duration of detention and whether the duration amounts to a due process violation; they do not "even remotely hint[ ] at" the suggestion "that due process might require a defendant to be released if pretrial detention impairs his ability to prepare for trial." *Id.* at *2. Stanford essentially argues that he must be released from pretrial detention because of the complexity of the case and the enormous volume of documents involved. The *Petters* court aptly explained the incongruity of such a proposition: "[A]ccepting such an argument would mean that the more complicated the crime, the more likely a defendant should be released prior to trial. This is clearly an absurd result." *Id.* (citing *United States v. Birbragher,* No. 07–CR–1023, 2008 WL 2246913, at *1 (N.D.Iowa May 29, 2008)). This Court agrees.[5]

---

5. Stanford's contention that "the circumstances in *Petters* were not remotely comparable to those here [and] nothing in *Petters* undercuts the arguments [he] advance[s] here" is simply inaccurate. For instance, just as in *Petters,* the defendant in this case "is a savvy businessman, charged with master-

The Court has carefully reviewed all of the evidence submitted and finds that Stanford's assertions that his pretrial detention interferes with his trial preparation to the extent that his Sixth Amendment rights are impeded are unfounded and baseless. The great weight of the evidence before the Court belies Stanford's contentions. For instance, the Federal Detention Center ("FDC") allows legal visitations between 8:00 AM and 8:00 PM, Monday through Thursday, and between 8:00 AM and 3:00 PM, Friday through Sunday and federal holidays, and inmates can request legal visits beyond those designated hours. *See* U.S. Department of Justice, Legal Guide to the Federal Detention Center Houston, Texas at 3; Declaration of Jennifer Hansen, Esq. at 5, *United States v. Stanford*, Crim. No. 09–342 (S.D. Tex. June 9, 2010) (Doc. No. 245–1). Indeed, Stanford has taken advantage of these visits. For example, according to FDC records, between April 1, 2010 and May 30, 2010, Stanford received multiple legal visits every day, most for more than several hours. *See* Declaration of Jennifer Hansen, Esq. at 5. Additionally, Stanford requested and received approval for extended legal visits on seventeen different occasions between April 25, 2010 and June 2, 2010. *Id.*

Furthermore, Stanford's assertion that he must have Internet access in order to review the documents in this case is without merit. The United States has provided Stanford and his attorneys with a database containing the documents in this case that can be downloaded to computer hard drives. In fact, Stanford's previous attorney, during a hearing in the separate in-surance coverage action, stated that he downloaded the documents to a hard drive for use in reviewing them with Stanford at the FDC. *See* Transcript of Oral Hearing at 138, *Pendergest–Holt v. Certain Underwriters of Lloyd's of London*, Civ. A. No. 09–3712 (June 3, 2010). The FDC has made available to Stanford from the beginning of his incarceration a computer to use in order to review the documents. *See* Declaration of Jennifer Hansen, Esq. at 9. Further, the FDC granted Stanford's request to allow his legal team to enter the FDC with a laptop computer, external hard drive, and printer during each legal visit. *Id.* Coupled with the fact that on April 22, 2010, the FDC placed two new computers in the Inmate Visiting Room, one of which is available to Stanford's legal team for document review, *see id.*, Stanford's contention that he is unable to access and review the voluminous documents in this case is not persuasive. *See Petters*, 2009 WL 205188, at *3 (noting similar accommodations). Additionally, Stanford's complaint about the amount of legal material he is allowed to store in his cell is not compelling given that, according to the FDC, as of June 3, 2010, Stanford had made no request to the warden to be allowed to keep more than the standard allowable amount of legal material in his cell. *See id.* Although the process the FDC employs in order to insure the safety and security of the inmates, staff, and others may be frustrating for Stanford and his attorneys, and the accommodations much less "posh" than Stanford prefers, there is no evidence that it is so burdensome as to impede his ability to prepare

minding a multibillion dollar fraud scheme." *Petters*, 2009 WL 205188, at *2 n. 2. Petters also was charged by twenty-count indictment with mail fraud, fraud, wire fraud, conspiracy, and money laundering. *Id.* Moreover, just as here, the *Petters* court determined that Petters was a flight risk because, among other reasons, Petters "often traveled overseas," faced a sentence "possibly resulting in life imprisonment, if convicted[ ], and that there was no way to verify that Defendant had not secreted assets enabling him to flee." *Compare id.* at *1, with *Stanford*, 630 F.Supp.2d at 752–57.

for trial or personally assist his counsel in such preparation. *See id.* Thus the Court determines, based on the record evidence, Stanford's Sixth Amendment right to prepare for trial with the aid of counsel has not been, and is not now, impeded by his pretrial detention. *See id.*

Second, Stanford complains that his pretrial detention has "reduced him to a wreck of a man" and has caused him to "suffer[ ] ... deterioration in [his] physical and mental capabilities." This too is an unpersuasive argument, which the Court previously considered and rejected, and the Fifth Circuit affirmed the Court's decision. *See Stanford,* 367 Fed.Appx. at 511 n. 4. As the United States points out, Stanford is not the first pretrial detainee to suffer health issues. The FDC is well equipped to provide appropriate medical attention to detainees who may require it. Moreover, Stanford cites no case in which a defendant detained pending trial was entitled to release from detention because he may have suffered infirmities while detained. And although Stanford insists that his motion rests solely upon Sixth Amendment and Due Process grounds and, under *Hare,* must be considered "upon its own unique circumstances," nothing in *Hare* suggests that illness or infirmity suffered while detained is a factor that weighs in favor of release. *See Hare,* 873 F.2d at 800–01.

Finally, Stanford challenges his continued detention directly under the Eighth Amendment relative to excessive bail. This argument is also unavailing. Although the Eighth Amendment "proscribes excessive bail ... it does not mandate that a defendant be allowed bail in all cases." *United States v. Abrahams,* 575 F.2d 3, 5, 7 (1st Cir.1978) (rejecting Eighth Amendment challenge of denial of bail where defendant was serious flight risk (citing *Carlson, et al. v. Landon,* 342 U.S. 524, 545–46, 72 S.Ct. 525, 96 L.Ed. 547

(1952))). Here, the Court determined that Stanford is a serious risk to flee and that there is no condition or combination of conditions of pretrial release that will reasonably assure his appearance as required for trial, *Stanford,* 630 F.Supp.2d at 756–57, a determination that was affirmed by the Fifth Circuit twice. *Stanford,* 367 Fed. Appx. at 512; *Stanford,* 341 Fed.Appx. at 984. "When no attainable conditions of release can be put into place, the defendant must be detained pending trial ... [and it] is sufficient for the court to find by a preponderance of the evidence that the defendant poses a serious flight risk." *United States v. McConnell,* 842 F.2d 105, 110 (5th Cir.1988) (citing *United States v. Trosper,* 809 F.2d 1107 (5th Cir.1987); *United States v. Fortna,* 769 F.2d 243 (5th Cir.1985)). "Pretrial detention based on flight risk does not violate the [E]ighth [A]mendment." *Id.* (citing *United States v. Winsor,* 785 F.2d 755 (9th Cir.1986)); *see also United States v. Acevedo–Ramos,* 755 F.2d 203, 206 (1st Cir.1985) ("[T]he right of an accused person to bail, while critically important, is not absolute. Where risk of flight is unusually great, a court may deny bail and keep a defendant in custody in order to insure that the trial will take place."); *Abrahams,* 575 F.2d at 8. In light of this, the Court determines Stanford's pretrial detention does not violate his Eighth Amendment rights. Consequently, his motion for release on those grounds should be denied.

## CONCLUSION

For all the foregoing reasons, the Court hereby

ORDERS that Defendant Robert Allen Stanford's Motion for Release from Detention or Dismissal of the Indictment Based on Violations of the Due Process Clause of the Fifth Amendment and the Sixth and

Eighth Amendments to the United States Constitution is DENIED.