**UNITED STATES of America**

v.

**Robert Allen STANFORD.**

**Criminal Action No. H–09–342.**

United States District Court, S.D. Texas, Houston Division.

Dec. 28, 2011.

Gregg Jeffrey Costa, James L. Turner, Financial Litigation, Office of the U.S. Attorney, U.S. Marshal, U.S. Pretrial Svcs., U.S. Probation, Houston, TX, Andrew Howard Warren, William Stellmach, U.S. Department of Justice, Washington, DC, for United States of America.

Ali R. Fazel, Scardino Fazel, John M., Parras, Attorney at Law, Kenneth W. McGuire, McGuire Law Firm, Robert A. Scardino, Jr., Houston, TX, Marlo Cadeddu, Law Office of Marlo P. Cadeddu PC, Dallas, TX, for Robert Allen Stanford.

## ORDER ON DEFENDANT'S MOTION FOR CONTINUANCE

DAVID HITTNER, District Judge.

Pending before the Court is Defendant's Motion for Continuance (Document No. 552). Having thoroughly considered the motion, submissions, and applicable law, the Court issues the following decision.

On June 18, 2009, a federal grand jury for the Southern District of Texas returned a twenty-one count indictment charging Robert Allen Stanford and others with, *inter alia,* conspiring to commit securities fraud and money laundering, and conspiring to obstruct and obstructing an investigation of the Securities and Exchange Commission ("SEC"). On May 4, 2011, a federal grand jury returned a four-

teen-count superseding indictment abandoning the securities fraud allegations and adding charges against Stanford for conspiracy to commit and committing mail and wire fraud.[1]

On January 26, 2011, this Court issued an order finding Stanford incompetent to stand trial. Pursuant to 18 U.S.C. § 4241(d), this Court ordered that Stanford be committed to the custody of the Attorney General and undergo medical treatment for his then-impaired mental capacity. On February 18, 2011, Stanford was admitted to the Bureau of Prisons Federal Medical Center in Butner, North Carolina ("FMC–Butner") for psychiatric evaluation. On November 4, 2011, following an eight-month evaluation period, the FMC–Butner medical staff submitted a report to the Court summarizing their findings and concluding that Stanford is competent to stand trial. On December 20, 2011, the Court commenced a three-day hearing on Stanford's current mental competency to stand trial. Based upon a preponderance of the evidence admitted at the hearing, the Court determined that Stanford had recovered to such an extent that he is now able to understand the nature and consequences of the proceedings against him and to assist properly in his defense.

■ On June 21, 2011, the Court issued an order stating that jury selection in this matter would commence in January 2012.[2] Stanford now seeks to continue this setting. As an initial matter, the Court notes that district courts have broad discretion in ruling on a motion to continue and setting a trial date. *United States v. German*, 486 F.3d 849, 854 (5th Cir.2007) ("Trial judges have broad discretion in deciding requests for continuance, and we review only for an abuse of that discretion resulting in *serious prejudice*." (emphasis added)). The circumstances of this case, as reflected by the Court's lengthy record, demonstrate that a continuance is unwarranted.

■ First, Stanford has had an extensive legal defense team. Since the inception of this case over two and one-half years ago, Stanford has been represented by fourteen different attorneys. The Court's record reflects that for the first sixteen months of the case, Stanford was represented by the following retained attorneys: Dick DeGuerin, Kirk Kennedy, Michael Sydow, Kent Schaffer, Alan Dershowitz, George McCall "Mac" Secrest, Michael Essmyer, Robert S. Bennett, Sean Buckley, and Stephen Cochell.[3] Then, on October 27, 2010, the Court issued an order declaring Stanford indigent and unable to afford defense counsel. Pursuant to the government-funded Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A, the Court appointed two very experienced criminal de-

1. On February 16, 2009, prior to the initiation of this criminal matter, the SEC commenced a civil lawsuit in the Northern District of Texas against Stanford; two associates, James M. Davis and Laura Pendergest–Holt; and three of Stanford's entities, Stanford International Bank, Ltd., Stanford Group Company, and Stanford Capital Management, LLC. On February 17, 2009, that district court entered an order appointing a Receiver to oversee all the assets and entities owned or controlled by the individual defendants and the Stanford entities. *See SEC v. Stanford, et al.*, No. 09–CV–0298–N (N.D.Tex. Feb. 17, 2009). This civil case is stayed pending resolution of the present criminal matter.

2. Order dated June 21, 2011 (Document No. 438).

3. It is noted that records from the Federal Detention Center in Houston, Texas, show that during most of 2010, Stanford was meeting with his legal defense team on a daily basis, including weekends and evenings. *See* Order dated July 7, 2010, 722 F.Supp.2d 803 (S.D.Tex.2010), Document No. 264, at 16.

fense attorneys—Robert Scardino [4] and Ali Fazel [5]—to represent Stanford at the government's expense. Subsequently, the Court appointed two additional criminal defense attorneys, John Parras and Ken McGuire, as assistant counsel. Therefore, four full-time attorneys have been working on Stanford's defense.[6]

Second, the discovery in this matter has been liberal. Throughout this case, the Government has maintained an open discovery file. All of the Government's evidence is electronically stored in a searchable database to which Stanford's defense team has been granted access from the very beginning. The Government has provided Stanford's defense team with a database index, describing the various cat-

egories of evidence. Moreover, the Government has specially designated all of the documents it deems most relevant to its case-in-chief and most likely to be introduced at trial. These categories and special designations enable Stanford's defense team to review the contents of key documents and then search within the relevant database categories for other similar documents, all electronically.[7] Furthermore, the Court has provided extensive leeway to Stanford's defense team by issuing third-party subpoenas, conducting discovery hearings, ordering and facilitating document production, and administering and approving CJA funds for such expenses.[8]

Third, the expenses in this case have already been massive. As an ancillary fil-

4. Member of the Southern District of Texas since December 1985.

5. Member of the Southern District of Texas since February 2000.

6. The Southern District of Texas's Criminal Justice Act Plan presumes the appointment of one attorney in most cases. However, "[m]ore than one attorney may be appointed in any case determined to be extremely difficult." General Order No. 2006–7, at 4, *available at* http://www.txs.uscourts.gov/attorneys/cja/HoustonCJAwithappendicies.pdf. But even in circumstances of the highest stakes (*i.e.,* capital cases), the Plan does not mandate the appointment of more than two attorneys. In the present case, which is a noncapital case, the Court has appointed four attorneys in an effort to fulfill the objectives of the Plan.

7. The primary allegations in this case are that Stanford solicited investment funds under false pretenses, failed to invest those funds as promised, misappropriated those funds for personal use, and misrepresented to investors the content, performance, and auditing practices of the investment portfolio. While the total amount of documents in the Government's possession and electronically available to the defense may be voluminous, a narrow set of documents detail the representations that Stanford allegedly made to investors. Those documents include, annual reports, marketing materials, training manuals for the

financial advisors selling Certificates of Deposits ("CDs"), bank records, and internal accounting spreadsheets. Additionally, the Government has even turned over in paper form all of the FBI Form 302 interview statements, which is most unusual.

8. Under the CJA, appointed attorneys shall be compensated for time expended in court and for time "reasonably expended out of court" and shall be reimbursed "for expenses reasonably incurred," *at the conclusion of their CJA representation. See* 18 U.S.C. § 3006A(d)(1). The district court is empowered to "fix" CJA appointed counsel compensation, and it has the statutory authority and discretion to determine what is a reasonable expense or a reasonable use of billable time. *See* 18 U.S.C. § 3006A(d)(5); *United States v. Griggs,* 240 F.3d 974, 974 (11th Cir.2001) ("[D]istrict courts are vested with discretion to set the amounts; fee determinations are made in an administrative setting rather than in an adversarial posture; awards of fees are not dependent upon the outcome of the case; and the CJA does not require a court to hold adversary hearings on fee awards."). In the present case, this Court has facilitated attorney compensation and expense reimbursement in a pay-as-you-go fashion, a practice not common in CJA funded cases, but nonetheless employed here to promote an effective use of time and resources.

ing with this Court, Stanford filed an *ex parte* appendix in support of his motion for continuance. One of the reasons Stanford raises therein is that his defense team is in need of additional CJA funds to obtain further discovery of documents in the possession of the Receiver. Stanford claims that his defense team is unable to complete desired discovery because of CJA budgetary restraints.[9] The Court notes, however, that since the appointment of Stanford's current defense team, this Court has already approved the payment of $1,683,862.60 in government funds to two defense-retained companies responsible for trial preparation and electronic-discovery management. This Court has also approved the payment of $78,820.68 in government funds to a defense-retained investigation company responsible for locating and securing witnesses to testify at trial. The Court further notes that for **just the three-month period** beginning September 2011 and ending November 2011, Stanford's defense team has submitted additional expense vouchers for services already rendered by its two electronic-discovery companies totaling $945,191.98 and for its investigation company totaling $34,197.73.[10] Stanford, as an indigent defendant, is entitled to a solid, capable, and competent defense, not the deluxe or "perfect" defense that he might have otherwise desired were he still in control of the millions (or even billions) of dollars indicative of his past lifestyle.[11] Given that the

9. On November 29, 2011, Stanford filed an *ex parte* request for approximately $787,000.00 in additional CJA funding to cover the costs, **just to copy,** nearly 3,000 boxes of documents in the possession of the Receiver in the SEC litigation. On December 1, 2011, the Court denied this funding request. It is noted, however, that for several months, these documents have been available for Stanford's defense team to peruse at their leisure. Additionally, "[i]n considering awards to counsel under the CJA, courts have long recognized that there is an inherent tension between the policies underlying the CJA. On the one hand, representing indigent defendants is a form of public service; thus, the [CJA] was never intended to provide full compensation for an attorney's services or to provide fees equal to those charged in private practice. On the other hand, the Act was also intended to provide indigent defendants with meaningful representation by competent counsel." *United States v. Mukhtaar,* No. 06 Cr 31(SWK), 2008 WL 2151798, at *2 (S.D.N.Y. May 21, 2008) (internal quotations and citations omitted). Other courts have explained that the CJA "was intended to partially alleviate the financial burden associated with provision of these services which had been traditionally provided pro bono. The spirit of the statute is lost once the CJA representation of indigent defendants loses its essentially pro bono nature." *United States v. Diaz,* 802 F.Supp. 304, 307 (C.D.Cal.1992) (quoting *United States v. Carnevale,* 624 F.Supp. 381, 383

(D.R.I.1985)). This Court remains mindful of these principles with respect to this case.

10. The amounts stated herein do not include the amounts paid and requested for attorneys' fees and paralegals' fees.

11. *See, e.g., Delaware v. Robert Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) ("As we have stressed on more than one occasion, the Constitution entitle[s] a criminal defendant to a fair trial, not a perfect one."); *Glen Burton Ake v. Oklahoma,* 470 U.S. 68, 77, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) ("[W]hile the Court has not held that a State must purchase for the indigent defendant all the assistance that his wealthier counterpart might buy, it has often reaffirmed that fundamental fairness entitles indigent defendants to an adequate opportunity to present their claims fairly within the adversary system. To implement this principal, we have focused on identifying the basic tools of an adequate defense or appeal, and we have required that such tools be provided to those defendants who cannot afford to pay for them." (internal quotes and citations omitted)); *Sawyer v. Butler,* 848 F.2d 582, 593 (5th Cir.1988) (stating that "[t]he thrust of the many constitutional rules governing the conduct of criminal trials is to ensure that those trials lead to fair and correct judgments," and relying on *Van Arsdall* for the proposition that "the Constitution entitles a criminal defen-

Government has maintained an open electronic-discovery system through which a large number of documents obtained by the Government from the Receiver relating to the specific criminal allegations in this case have been available, the Court fails to see how Stanford will be seriously prejudiced if he is not permitted to expend an additional $787,000.00 in government funds just for reproduction costs of 3,000 boxes of documents of unknown content.

Fourth, this case needs to be tried. To date, Stanford has already been in pretrial detention for over two and one-half years. In the Court's January 26, 2011 Order of Psychiatric Evaluation, the Court specifically admonished "the attorneys representing the Government and Stanford to diligently prepare this case to proceed to trial notwithstanding Stanford's absence." [12] Moreover, while this case has been deemed complex for purposes of the Speedy Trial Act, the Court is mindful that the aim of the Speedy Trial Act is to vindicate the interest not just of defendants, but also of the public. *See* 18 U.S.C. § 3161(h)(7)(A). The public's interest in a speedy trial is particularly acute in such a case as this in which thousands of investors allegedly purchased CDs from Stanford under false pretenses and subsequently lost billions of dollars. This trial will decide not just whether Stanford is guilty of the criminal charges, but also whether hundreds of millions of dollars of investor funds currently frozen may be forfeited and returned to his alleged victims.

Accordingly, based on all of the foregoing, the Court hereby

ORDERS that Defendant's Motion for Continuance (Document No. 552) is DENIED. Jury selection is this matter will commence on January 23, 2012 at 10:00 a.m.

---

dant to a fair trial, not a perfect one." (internal citations omitted)); *Crehore v. United States*, 127 Fed.Appx. 792, 796 (6th Cir.2005) ("[A] defendant is entitled to competent representation, but not a perfect defense." (citing *United States v. Natanel*, 938 F.2d 302, 309 (1st Cir.1991) ("The Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather the [*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)] standard is that of reasonable effective assistance under the circumstances."))); *Lefever v. Money*, 225 F.3d 659 (table), 2000 WL 977305, at *6 (6th Cir. July 6, 2000) ("For defendant's trial counsel to have deprived her of her Sixth Amendment right to effective assistance, the counsel's performance must have so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. In bridging such a claim, defendant must bear in mind that the Constitution guarantees competent counsel and a fair trial, not perfection." (internal quotes and citations omitted)).

**12.** Order dated January 26, 2011 (Document No. 402).