SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

### In the Matter of the Request to Release Certain Pretrial Detainees
**(M-550-20) (085186)**

**Argued January 20, 2021 -- Decided February 11, 2021**

**RABNER, C.J., writing for the Court.**

This Order to Show Cause raises questions about the impact of the COVID-19 pandemic and the suspension of in-person criminal jury trials on defendants who have been detained pretrial.

Under the Criminal Justice Reform Act (CJRA or Act), defendants who pose a serious risk of non-appearance, danger, or obstruction can be detained before trial if no combination of conditions of release will reasonably guard against those risks. Because criminal jury trials remain suspended, the length of pretrial detention has been extended in many cases.

In response to the present situation, the Office of the Public Defender and the American Civil Liberties Union of New Jersey jointly seek two forms of relief: (1) the release of all defendants detained for six months or longer whose most serious charge is a second-degree offense or lower, with an opportunity for the State to object in individual cases and seek to justify continued detention under an enhanced burden of proof; and (2) new detention hearings for all defendants detained for six months or longer who are charged with a first-degree offense and entitled to a presumption of release. Movants rely on constitutional and statutory bases in support of their requests for relief.

Due process concerns can impose limits on pretrial detention. Courts look to various considerations to assess that type of due process challenge, not just the length of detention. The fact-specific inquiry called for is best conducted on an individual basis in order to balance the relevant factors and assess the level of risk each defendant presents. By contrast, broad-based relief for large categories of defendants could sweep in cases in which release from detention would not be appropriate.

The Court declines to grant relief on a categorical basis for other reasons as well. Movants argue that prolonged detention before trial could raise serious due process concerns, but they do not contend the statutory scheme is unconstitutional at this time. As a result, the doctrine of judicial surgery, which is designed to save an otherwise unconstitutional statute, is not available. Nor can the Court exercise its rulemaking authority to amend the substance of the Act.

1

**HELD:**    *Section 19(f) of the CJRA offers a path for potential relief under the present circumstances. Under that provision, N.J.S.A. 2A:162-19(f), individual defendants can apply to reopen detention hearings if they can present information that was not known at the time of the initial hearing and that "has a material bearing" on the release decision.

*The unexpected duration of the pandemic coupled with the continued suspension of jury trials, with no clear end date for either, constitutes new information within the meaning of N.J.S.A. 2A:162-19(f). Materiality presents a separate issue and depends on a defendant's individual circumstances. To assess whether delays caused by the pandemic are material to the level of risk a defendant poses, trial judges can consider the following factors: (1) the length of detention to date as well as the projected length of ongoing detention; (2) whether a defendant has been or will be in detention longer than the likely amount of time the person would actually spend in jail if convicted; (3) the existence and nature of a plea offer; (4) a defendant's particularized health risks, if any, and whether they present a heightened risk the individual will contract COVID-19; and (5) other factors relevant to pretrial detention that are outlined in N.J.S.A. 2A:162-20.

*Defendants who have been detained for at least six months, and can make a preliminary showing that they are entitled to relief based on one or more of the above factors, have the right to reopen their detention hearings under section 19(f). Trial judges have discretion to resolve motions that do not meet both conditions without holding a hearing. Hearings should be conducted on an expedited basis in the trial court, and reviewed in the same manner on appeal. Defendants subject to a presumption of detention -- those charged with murder or facing a sentence of life imprisonment -- will likely not be eligible for new hearings.

1. Movants concede the CJRA is constitutional but argue that continued detention raises potentially serious due process concerns. The pretrial detention process is constitutional so long as it serves regulatory rather than punitive purposes. But if pretrial detention under a regulatory scheme is significantly prolonged, a defendant's confinement may become punitive. Whether the length of detention violates due process in that way requires assessment on a case-by-case basis; due process is a flexible concept that does not necessarily set a bright line limit for length of pretrial confinement. (pp. 10-11)

2. The CJRA contains various time limits designed to move cases toward trial. The Court does not find that the pandemic, along with the accompanying suspension of in-person criminal jury trials, has transformed the CJRA's overall approach to pretrial detention into a punitive scheme. Yet individual cases, which are not the subject of the Order to Show Cause, can be subject to challenge on due process grounds. The length of detention alone is not dispositive. A more comprehensive, fact-specific inquiry in each case is needed, and relief tied only to the length of detention for large categories of defendants would not be appropriate for a variety of reasons. Cases are best examined on

2

an individual basis, which the CJRA provides for under the present circumstances. The constitutional remedies movants propose -- judicial surgery and the Court's rulemaking authority -- are thus not well-suited for the current circumstances. (pp. 12-17)

3. N.J.S.A. 2A:162-19(f) presents a path for individual defendants to argue against continued detention when (1) there is new information, or a change in circumstances, (2) that is material to the release decision. As to the first prong, the Court has found "that the worldwide pandemic that has afflicted New Jersey and its prison system amounts to a change in circumstances" within the meaning of Rule 3:21-10(b)(2). In re Request to Modify Prison Sentences, 242 N.J. 357, 379 (2020). That finding logically extends to section 19(f). Section 19(f)'s second prong -- materiality -- will vary by defendant and turn on the particular facts of each case. The critical question at a hearing that is reopened is not whether the initial detention decision was correct, but whether the circumstances at the time of the later hearing warrant continued detention. That issue calls for a renewed examination of whether any combination of conditions would reasonably assure against the risk of non-appearance, danger, or obstruction in light of delays caused by the pandemic. N.J.S.A. 2A:162-18, -19(f). (pp. 17-20)

4. The Court explains in detail the five factors courts can consider to assess those risks. Noting it is far less likely courts would find material changes in the case of defendants detained for less than six months, the Court holds that defendants have the right to reopen detention hearings under N.J.S.A. 2A:162-19(f) if they (1) have been detained for at least six months and (2) can make a preliminary showing that, based on one or more of the five factors, they are entitled to relief. (Because disorderly persons offenses are punishable by up to six months in jail, judges have discretion to entertain and review motions from defendants charged only with such an offense before those defendants have been detained for six months.) Those threshold requirements are meant to limit hearings to defendants who are better able to show a material change in the level of risk they present, in the context of the pandemic and the delays it has caused. Trial judges have discretion to resolve motions that do not meet both conditions without holding a hearing. (pp. 20-25)

5. New hearings may proceed before the same judge who conducted the original hearing or another judge in the vicinage. The Court directs that trial judges conduct reopened hearings in appropriate cases on an expedited basis, and that any appeals be reviewed in the same manner. The Court asks the Director of the Administrative Office of the Courts to help implement a timely process at the trial and appellate levels. (p. 26)

6. Movants identify N.J.S.A. 2A:162-21(b) as an alternative statutory basis for relief. The Court explains why it has instead focused on section 19(f). (pp. 26-27)

**The request for relief is GRANTED IN PART and DENIED IN PART.**

**JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in CHIEF JUSTICE RABNER's opinion.**

# SUPREME COURT OF NEW JERSEY
## M-550 September Term 2020
## 085186

---

In the Matter of the Request to
Release Certain Pretrial Detainees

---

On an Order to Show Cause to Address the Release
of Certain Individuals Detained Pretrial, Among
Other Relief Requested.

---

| Argued | Decided |
|---|---|
| January 20, 2021 | February 11, 2021 |

---

Joseph E. Krakora, Public Defender, argued the cause for the Office of the Public Defender (Joseph E. Krakora, Public Defender, attorney; Joseph E. Krakora, Joseph J. Russo, Assistant Public Defender, Alison Perrone, First Assistant Deputy Public Defender, Laura B. Lasota, Assistant Deputy Public Defender, and Elizabeth C. Jarit, Assistant Deputy Public Defender, on the briefs).

Alexander Shalom argued the cause for the American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, attorneys; Alexander Shalom and Jeanne LoCicero, on the briefs).

Claudia Joy Demitro, Deputy Attorney General, argued the cause for the Attorney General of New Jersey, (Gurbir S. Grewal, Attorney General, attorney; Carol M. Henderson, Assistant Attorney General, of counsel and on the brief, and Claudia Joy Demitro, Jennifer E. Kmieciak, Deputy Attorney General, and Mercedes N. Robertson, Deputy Attorney General, of counsel and on the brief).

Anthony J. Robinson, First Assistant Warren County Prosecutor, argued the cause for the County Prosecutors Association of New Jersey (Esther Suarez, President, County Prosecutors Association of New Jersey, attorney; Anthony J. Robinson, John McNamara, Jr., Special Deputy Attorney General/Acting Chief Assistant Morris County Prosecutor, Paul H. Heinzel, Assistant Somerset County Prosecutor, and Jessica Marshall, Special Deputy Attorney General/Assistant Morris County Prosecutor, on the brief).

CHIEF JUSTICE RABNER delivered the opinion of the Court.

This Order to Show Cause raises questions about the impact of the COVID-19 pandemic and the suspension of in-person criminal jury trials on defendants who have been detained pretrial.

Under the Criminal Justice Reform Act (CJRA or Act), defendants who pose a serious risk of non-appearance, danger, or obstruction can be detained before trial if no combination of conditions of release will reasonably guard against those risks. N.J.S.A. 2A:162-15. According to the Administrative Office of the Courts (AOC), more than 4,900 defendants were detained and awaiting trial in late January 2021. Few criminal jury trials have been held since March 2020, however, because of the health risks that in-person trials pose to jurors, participants, and members of the public with whom they interact. Because criminal jury trials remain suspended, the length of pretrial detention has been extended in many cases.

2

In response to the present situation, the Office of the Public Defender and the American Civil Liberties Union of New Jersey (ACLU) jointly seek two forms of relief: (1) the release of all defendants detained for six months or longer whose most serious charge is a second-degree offense or lower, with an opportunity for the State to object in individual cases and seek to justify continued detention under an enhanced burden of proof; and (2) new detention hearings under N.J.S.A. 2A:162-19(f) for all defendants detained for six months or longer who are charged with a first-degree offense and entitled to a presumption of release. Movants rely on constitutional and statutory bases in support of their requests for relief.

We recognize that due process concerns can impose limits on pretrial detention. Courts look to various considerations to assess that type of due process challenge, not just the length of detention. The fact-specific inquiry called for is best conducted on an individual basis in order to balance the relevant factors and assess the level of risk each defendant presents. By contrast, broad-based relief for large categories of defendants could sweep in cases in which release from detention would not be appropriate.

We decline to grant relief on a categorical basis for other reasons as well. Movants argue that prolonged detention before trial could render the CJRA punitive, rather than regulatory, and thereby raise serious due process

3

concerns. But they do not contend the statutory scheme is unconstitutional at this time. As a result, the doctrine of judicial surgery, which is designed to save an otherwise unconstitutional statute, see State v. Natale, 184 N.J. 458, 485-86 (2005), is not available. Nor can the Court exercise its rulemaking authority to amend the substance of the Act. See N.J. Const. art. VI, § 2, ¶ 3; Winberry v. Salisbury, 5 N.J. 240, 247-48 (1950).

Section 19(f) of the CJRA offers a path for potential relief under the present circumstances. See N.J.S.A. 2A:162-19(f). Under that provision, individual defendants can apply to reopen detention hearings if they can present information that was not known at the time of the initial hearing and that "has a material bearing" on the release decision. Ibid.

We hold that the unexpected duration of the pandemic coupled with the continued suspension of jury trials, with no clear end date for either, constitutes new information within the meaning of the statute. Materiality presents a separate issue and depends on a defendant's individual circumstances. To assess whether delays caused by the pandemic are material to the level of risk a defendant poses, trial judges can consider the following factors: (1) the length of detention to date as well as the projected length of ongoing detention; (2) whether a defendant has been or will be in detention longer than the likely amount of time the person would actually spend in jail if

4

convicted; (3) the existence and nature of a plea offer; (4) a defendant's particularized health risks, if any, and whether they present a heightened risk the individual will contract COVID-19; and (5) other factors relevant to pretrial detention that are outlined in N.J.S.A. 2A:162-20.

Defendants who have been detained for at least six months, and can make a preliminary showing that they are entitled to relief based on one or more of the above factors, have the right to reopen their detention hearings under section 19(f). Such hearings should be conducted on an expedited basis in the trial court, and reviewed in the same manner on appeal. Defendants subject to a presumption of detention under the statute -- those charged with murder or facing a sentence of life imprisonment -- will likely not be eligible for new hearings. See N.J.S.A. 2A:162-19(b).

We therefore grant in part and deny in part the relief sought. Eligible defendants may apply to reopen their detention hearings under section 19(f) at this time.

I.

On December 4, 2020, the Office of the Public Defender and the ACLU jointly applied to this Court to enter an Order to Show Cause. Movants seek two types of relief:

(1) the release of all defendants detained under the CJRA for six months or longer whose most serious charge is a second-degree offense or lower. If the State objected, it would have to demonstrate <u>beyond a reasonable doubt</u> that no conditions would reasonably assure against the <u>serious and imminent</u> risk of non-appearance, danger, or obstruction. Judges or special masters from a county other than where the case is assigned would preside over matters in which an objection is raised; and

(2) new detention hearings under N.J.S.A. 2A:162-19(f) for all defendants detained for six months or longer who are charged with a first-degree offense and entitled to a presumption of release. The Act's clear and convincing evidence standard would apply to the hearings, which judges or special masters from another county would conduct.

Movants thus seek to modify the statute in two ways: requiring judges to find that defendants pose a "serious and imminent" risk; and imposing a higher standard of proof -- "beyond a reasonable doubt" in place of "clear and convincing evidence."

At the core of movants' application is a simple reality: in-person criminal jury trials have been suspended because of COVID-19, which has led

6

to the continued detention of many pretrial detainees. As of February 8, 2021, according to the AOC, 4,937 detained defendants were being held pretrial on the following categories of offenses: 1,842 on a first-degree offense; 1,780 on a second-degree offense; 1,044 on a third-degree offense; 243 on a fourth-degree offense; and 28 on a disorderly persons offense.[1]

As of December 4, 2020, the Office of the Public Defender estimated that about 650 of its clients charged with second-, third-, or fourth-degree crimes had been detained for six months or longer, and that an additional 400 clients charged with first-degree offenses were in the same position.

The Court asked movants to present legal authority in support of their position. Shortly after they submitted written arguments, the Court entered an Order to Show Cause. The Attorney General and the County Prosecutors Association of New Jersey (CPA) submitted briefs in opposition on December 30, 2020.

II.

We note certain basic points at the outset. First, each of the defendants for whom relief is now sought had a court hearing after their arrest, at which counsel represented them. See N.J.S.A. 2A:162-19(d), (e). At the hearings,

---

[1] The numbers have been adjusted to account for eligible defendants detained in more than one case.

judges considered a broad array of factors to assess the level of risk each person posed. See id. at -20. The nature and degree of the charged offenses were only part of that review.

At hearings that involved certain serious charges, a presumption of detention applied, which a number of defendants were unable to rebut. See id. at -19(b) (providing a rebuttable presumption of detention when the court finds probable cause that a defendant committed murder or any crime that exposes the person to life imprisonment).

In the larger group of cases that did not involve a presumption of detention, courts found by clear and convincing evidence that no combination of conditions of release "would reasonably assure the eligible defendant's appearance in court when required, the protection of the safety of any other person or the community, and that the eligible defendant will not obstruct or attempt to obstruct the criminal justice process." Id. at -18(a)(1). Thus, each defendant ordered detained pretrial presented a high level of risk in at least one of three areas.

Second, the ongoing COVID-19 pandemic prompted the pending request for relief. The parties differ about the impact of the pandemic in county jails. Movants contend that inmates face a heightened risk of contracting COVID-19 in jail. They point to the number of documented cases and deaths among

inmates in New Jersey correctional facilities.  As of February 9, 2021, there have been 4,283 cases and 52 deaths.  Dep't of Corr., COVID 19 Updates, https://www.state.nj.us/corrections/pages/COVID19Updates.shtml.

In response, the State highlights efforts to reduce the prison population and prevent the spread of COVID-19 among prisoners.  See In re Request to Modify Prison Sentences, 242 N.J. 357, 381 n.3 (2020) (discussing consent order to reduce the county jail population); Exec. Order No. 124 (April 10, 2020), 52 N.J.R. 963(a) (May 4, 2020) (creating process to identify and furlough certain inmates in state prison); L. 2020, c. 111 (eff. Nov. 4, 2020) (awarding public health emergency jail credits).  The Attorney General also points to data that reveals a drop in the number of reported recent cases and deaths:  733 new cases for the week of May 27, 2020, compared to 164 new cases the week of December 15; and 6 deaths since July with none since September.  See The Marshall Project, A State-by-State Look at Coronavirus in Prisons, (as updated Jan. 29, 2021), https://www.themarshallproject.org/2020/05/01/a-state-by-state-look-at-coronavirus-in-prisons.

We need not make specific findings here aside from recognizing the obvious:  COVID-19 has created an ongoing health crisis of enormous proportions for all of society -- including individuals held in jail.

9

III.

Movants identify two potential sources of authority for the relief they seek -- constitutional and statutory. We begin with the constitutional points raised.

Movants made significant and thoughtful concessions in their briefs and at oral argument. They concede the CJRA is constitutional.[2] They also stress the law's constitutionality is tied to a defendant's right to a jury trial and the ability to exercise that right within a reasonable period of time.

Movants submit they are pursuing relief now to ensure the continued constitutionality of the Act. The thrust of their argument is that continued detention raises potentially serious due process concerns that would require intervention. They contend that prolonged detention of defendants pretrial would render the Act punitive, rather than regulatory. See United States v. Salerno, 481 U.S. 739, 746-48 (1987); Bell v. Wolfish, 441 U.S. 520, 535-40 (1979).

---

[2] The CJRA, like any statute, is presumed constitutional. See Whirlpool Props., Inc. v. Dir., Div. of Tax'n, 208 N.J. 141, 172 (2011); see also State v. Ingram, 230 N.J. 190, 204-13 (2017) (holding that the State's ability to proceed by proffer at detention hearings under the Act comports with due process); State v. Robinson, 229 N.J. 44, 74-76 (2017) (finding the Act's discovery provisions satisfy the requirements of due process).

10

A.

It is clear that due process concerns impose limits on how long a defendant may be held in custody before trial.

Pretrial detention schemes necessarily balance the liberty interest of individuals presumed innocent against public safety concerns posed by high-risk defendants. See Salerno, 481 U.S. at 748-51; Robinson, 229 N.J. at 68. The process is constitutional so long as it serves regulatory rather than punitive purposes. Salerno, 481 U.S. at 746-48; Bell, 441 U.S. at 535-40. But if pretrial detention under a regulatory scheme is significantly prolonged, a defendant's confinement may become punitive. United States v. Theron, 782 F.2d 1510, 1516 (10th Cir. 1986).

Whether the length of detention violates due process in that way "requires assessment on a case-by-case basis" because due process is a flexible concept that "does not necessarily set a bright line limit for length of pretrial confinement." United States v. Orena, 986 F.2d 628, 630 (2d Cir. 1993) (quoting United States v. Gonzales Claudio, 806 F.2d 334, 340 (2d Cir. 1986)); see also United States v. Accetturo, 783 F.2d 382, 388 (3d Cir. 1986) ("Because due process is a flexible concept, arbitrary lines should not be drawn regarding precisely when defendants adjudged to be flight risks or dangers to the community should be released pending trial.").

11

The CJRA contains various time limits designed to move cases toward trial. Aside from periods of excludable time, prosecutors must indict cases within ninety days, N.J.S.A. 2A:162-22(a)(1)(a), and trials must commence within 180 days for defendants who are detained, id. at -22(a)(2)(a). Of note here, the Act provides for excludable time for "[t]he time resulting from exceptional circumstances including . . . a natural disaster." Id. at -22(b)(1)(f).

The statute also sets an overall limit of two years for pretrial detention, excluding delays attributable to the defendant, if the prosecutor is not ready to proceed to trial. Id. at -22(a)(2)(a). Otherwise, defendants "shall be released" at the two-year mark subject to a number of potential conditions. Ibid.; id. at -17 (listing possible conditions of release). The two-year limit is a protective measure to guard against unduly prolonged detention. It is not a goal used for case-management purposes, and cases should be resolved before then whenever possible.

We do not find that the pandemic, along with the accompanying suspension of in-person criminal jury trials, has transformed the CJRA's overall approach to pretrial detention into a punitive scheme. Yet individual cases, which are not the subject of the Order to Show Cause, can be subject to challenge on due process grounds based on the length of detention.

12

Accetturo offers guidance on how to assess whether such a violation has occurred:

> [D]ue process judgments should be made on the facts of individual cases, and should reflect the factors relevant in the initial detention decision, such as the seriousness of the charges, the strength of the government's proof that defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits. Moreover, these judgments should reflect such additional factors as the length of the detention that has in fact occurred, the complexity of the case, and whether the strategy of one side or the other has added needlessly to that complexity. In some cases, the evidence admitted at the initial detention hearing, evaluated against the background of the duration of pretrial incarceration and the causes of that duration, may no longer justify detention.

> [783 F.2d at 388.]

Relying on similar considerations, courts have found due process violations in a number of individual cases. See, e.g., United States v. Ojeda Rios, 846 F.2d 167, 168-69 (2d Cir. 1988) (32 months of pretrial detention); Gonzales Claudio, 806 F.2d at 341-43 (26 months of detention expected through trial).

In other matters, courts have found that lengthy detentions were not excessive in light of the factual circumstances of those cases. See, e.g., United States v. Briggs, 697 F.3d 98, 101-04 (2d Cir. 2012) (26 months of pretrial detention); United States v. El-Hage, 213 F.3d 74, 78-82 (2d Cir. 2000) (30 to

13

33 months of detention expected through trial); United States v. El-Gabrowny, 35 F.3d 63, 65 (2d Cir. 1994) (27 months of detention expected through trial); United States v. Millan, 4 F.3d 1038, 1044-49 (2d Cir. 1993) (30 to 31 months of detention expected through a second trial); United States v. Zannino, 798 F.2d 544, 547-49 (1st Cir. 1986) (16 months of pretrial detention).

To be clear, as the Second Circuit has explained, "the length of detention alone is not dispositive." El-Hage, 213 F.3d at 79. A more comprehensive, fact-specific inquiry in each case is needed. See El-Gabrowny, 35 F.3d at 65 ("[E]ach case must be examined on its own facts."); Accetturo, 783 F.2d at 388 ("[D]ue process judgments should be made on the facts of individual cases . . . .").

As alluded to in Accetturo, relief tied only to the length of detention for large categories of defendants would not be appropriate for a variety of reasons. 783 F.2d at 388. Among them, such an approach could sweep in cases in which defendants were responsible for delays, the complexity of the case required more time to address issues before trial, or critical witnesses were unavailable through no fault of either party. And, of course, not all second-degree offenses or offenders are alike. Some matters are more serious than others; some are supported by stronger or weaker proofs; and no two

14

offenders have the same history and characteristics or present precisely the same degree of risk.

Once again, cases are best examined on an individual basis, which the CJRA provides for under the present circumstances. For those reasons, we find that the constitutional remedies movants propose -- judicial surgery and the Court's rulemaking authority -- are not well-suited for the current circumstances.

B.

Courts engage in judicial surgery "when necessary" to "save an enactment that otherwise would be constitutionally doomed." Natale, 184 N.J. at 485-86 (citing Town Tobacconist v. Kimmelman, 94 N.J. 85, 104 (1983)). The tool is a way to resolve constitutional defects. See NYT Cable TV v. Homestead at Mansfield, Inc., 111 N.J. 21, 27-28 (1988) (Handler, J., concurring) ("In necessitous circumstances when the constitutionality of a statute is threatened, we have excised constitutional defects or engrafted new meanings to assure its survival."). Absent a constitutional violation, the Attorney General argues, judicial surgery is inappropriate.

Courts strive to give effect to the Legislature's intent. State v. J.V., 242 N.J. 432, 442 (2020). As a result, when part of a law is invalid, courts must first decide whether the lawmakers wanted "the enactment [to] stand or fall as

15

a unitary whole." State v. Lanza, 27 N.J. 516, 527 (1958); see also Inganamort v. Borough of Fort Lee, 72 N.J. 412, 422 (1977); N.J.S.A. 1:1-10.

If a court concludes the Legislature would prefer that a law be altered or narrowed, rather than struck down entirely, the court may engage in surgery to remedy the flaw. See, e.g., Natale, 184 N.J. at 487 (eliminating presumptive terms in sentencing to preserve the constitutionality of the criminal code); Town Tobacconist, 94 N.J. at 103-04 (striking language from the Drug Paraphernalia Act to avoid constitutional perils of vagueness and arbitrary enforcement); Chamber of Commerce v. State, 89 N.J. 131, 161-62 (1982) (striking language from the Strikebreakers Act to avoid a violation of the Commerce Clause).

Under the circumstances of this matter, we decline to engage in judicial surgery. That approach would work a wholesale change in an otherwise constitutional statute to remedy circumstances best assessed on a case-by-case basis.

## C.

The same would be true if, in these circumstances, the Court were to invoke its authority to "make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts." N.J. Const. art. VI, § 2, ¶ 3. The Court's rulemaking power,

16

moreover, does not extend to rewriting substantive legislation that is constitutional. "While the courts necessarily make new substantive law through the decision of specific cases coming before them, they are not to make substantive law wholesale through the exercise of the rule-making power." Winberry, 5 N.J. at 248.

In sum, although we recognize that individual cases may present due process concerns, we believe the constitutional remedies proposed are too broad. We therefore turn to the statutory remedies advanced.

IV.

Movants highlight two statutory bases for relief, which we consider in turn.

A.

N.J.S.A. 2A:162-19(f) allows for detention hearings to be reopened when there is a material change in circumstances:

> The hearing may be reopened, before or after a determination by the court, at any time before trial, if the court finds that information exists that was not known to the prosecutor or the eligible defendant at the time of the hearing and that has a material bearing on the issue of whether there are conditions of release that will reasonably assure the eligible defendant's appearance in court when required, the protection of the safety of any other person or the community, or that the eligible defendant will not obstruct or attempt to obstruct the criminal justice process.

17

[N.J.S.A. 2A:162-19(f) (emphases added); see also R. 3:4A(b)(3).]

Section 19(f) thus presents a path for individual defendants to argue against continued detention when (1) there is new information, or a change in circumstances, (2) that is material to the release decision. The clause does not authorize relief for categories of defendants or empower courts to make changes to the statutory scheme.

As to the first prong, in Request to Modify decided last June, the Court addressed "issues relating to the impact of the coronavirus on individuals in state prison and juvenile facilities." 242 N.J. at 366. Among other issues, the Court found "that the worldwide pandemic that has afflicted New Jersey and its prison system amounts to a change in circumstances" within the meaning of Rule 3:21-10(b)(2). Id. at 379.

Under that Rule, "[a] motion may be filed and an order may be entered at any time . . . amending a custodial sentence to permit the release of a defendant because of illness or infirmity of the defendant." R. 3:21-10(b)(2). To obtain relief, inmates must first establish, as "an essential predicate," "that a change of circumstances [has] occurred." State v. Priester, 99 N.J. 123, 136 (1985). As the Court found, the COVID-19 pandemic satisfies that requirement. Request to Modify, 242 N.J. at 379.

The same finding logically extends to section 19(f).  The unexpected duration of the pandemic as well as the continued suspension of jury trials, without a clear end date for either, constitutes new information or a change in circumstances.  See Comm. for Pub. Couns. Servs. v. Chief Justice of the Trial Ct., 142 N.E.3d 525, 529-30 (Mass. 2020); Karr v. State, 459 P.3d 1183, 1186 (Alaska Ct. App. 2020).

Earlier last year, even experts could not predict the full scope, duration, or impact of the pandemic on society, let alone on the court system.  Because of the health risk to jurors, witnesses, attorneys, staff, and judges, along with members of the public with whom they interact, the Judiciary suspended criminal jury trials in March 2020 and again in November 2020, after a brief resumption of in-person trials.  Sup. Ct. of N.J., Notice -- COVID-19 Coronavirus -- Status of Court Operation -- Immediate and Upcoming Plans, at 1 (Mar. 12, 2020); Sup. Ct. of N.J., Omnibus Order on COVID-19 Issues, at 2 (Mar. 27, 2020); Sup. Ct. of N.J., Notice and Order -- COVID-19 -- Suspension of New In-Person Jury Trials and In-Person Grand Jury Sessions; Revised End-Dates for Excludable Time, at 3 (Nov. 16, 2020) (Nov. 16, 2020 Notice and Order).[3]

---

[3]  Copies of Court orders, notices, and press releases related to COVID-19 are available on the Judiciary's website.  See https://njcourts.gov/attorneys/ notices.html; https://njcourts.gov/public/pr.html.

19

Section 19(f)'s second prong -- materiality -- will vary by defendant and turn on the particular facts of each case. The critical question at a hearing that is reopened is not whether the initial detention decision was correct, but whether the circumstances at the time of the later hearing warrant a defendant's continued detention. In the words of the statute, does the new information have a "material bearing" on the standard that governs release decisions? That issue, in turn, calls for a renewed examination of whether any combination of conditions would reasonably assure against the risk of non-appearance, danger, or obstruction in light of delays caused by the pandemic. N.J.S.A. 2A:162-18, -19(f).

Trial courts can consider a number of factors to assess those risks:

1. *The length of detention to date as well as the projected length of ongoing detention.* See Commonwealth v. Lougee, 147 N.E.3d 464, 475 (Mass. 2020); see also El-Hage, 213 F.3d at 78-79 (considering the expected length of pretrial detention through the end of trial in the context of a due process challenge); El-Gabrowny, 35 F.3d at 65 (same); Millan, 4 F.3d at 1044 (same); Gonzales Claudio, 806 F.2d at 341 (same).

The Judiciary is committed to restart jury trials as soon as practicable. The Court did so temporarily from September to mid-November 2020. In that limited time, trial courts conducted about a dozen trials yet were able to

20

resolve more than 340 civil and criminal cases by scheduling actual trial dates in those matters.[4]  Nov. 16, 2020 Notice and Order, at 2; Press Release, New Jersey Courts, New Jersey Supreme Court Order Suspends Jury Trials Amid Second Wave of COVID-19 Pandemic (Nov. 16, 2020).  As the second wave of the pandemic crests and more people are vaccinated, we hope to able to resume trials later this year.  That said, it is difficult to be precise in estimating the projected length of detention at this time because of the ongoing and evolving nature of the pandemic.

2. *Whether a defendant has been or will be in detention longer than the likely amount of time the person would actually spend in jail if convicted.*  In many cases, judges found that individual defendants posed a high risk of non-appearance at their initial detention hearings.  Defendants who have since served a substantial amount of time in custody, which will be credited toward their sentence, might be more inclined to appear for court events rather than risk additional penalties by failing to show up.  Today's widespread use of

---

[4]  Less than two percent of criminal cases are resolved through trials.  Nat'l Ctr. for State Cts., Interactive Caseload Data Displays, Court Statistics Project, www.courtstatistics.org/court-statistics/interactive-caseload-data-displays (last updated Dec. 9, 2020) (noting that in New Jersey in 2019 there were only 573 criminal jury trials and 106 criminal bench trials out of 48,264 dispositions). The pressure of an actual trial date is often the catalyst for resolving a criminal charge.

21

remote court proceedings might also bear on the risk of non-appearance.

Moreover, the Judiciary should attempt to ensure that defendants spend no more time in custody than they would have served if the court system were fully operational. That entails consideration of the sentencing range, the likely sentence, and any applicable period of parole ineligibility.

For this factor, judges should weigh the actual amount of time to be spent in jail in case of a conviction, against the expected length of pretrial detention. A fourth-degree offender facing a statutory maximum of eighteen months' incarceration, and considerably less actual time in jail in most cases, will naturally be in a different position than a first-degree offender facing a range of ten to twenty years in prison. See N.J.S.A. 2C:43-6(a).

3. *The existence and nature of a plea offer.* Plea offers present similar considerations. Courts should weigh how much time a defendant would spend in jail under a plea offer as compared to the expected amount of time in pretrial detention. We anticipate that prosecutors will act in good faith and continue to extend plea offers in the same manner they did before the pandemic.

4. *A defendant's particularized health risks, if any, and whether they present a heightened risk the individual will contract COVID-19.* Specific health risks of a defendant who is required to remain in custody may bear on

22

the level of risk posed and factor into whether the aim of pretrial detention can be met through other conditions.  See Lougee, 147 N.E.3d at 476 ("A judge ruling on a motion for reconsideration [of pretrial detention] should . . . consider the health risks to the defendant in determining whether there are conditions of release that will reasonably assure the safety of any other person or the community."); see also United States v. Shaheed, 455 F. Supp. 3d 225, 235, 238 (D. Md. 2020) (weighing defendant's asthma and risk of harm from COVID-19, among other considerations, at a motion to reopen a detention hearing).

As part of their analysis, courts may consider whether a defendant's health has deteriorated since the detention hearing and is now more susceptible to serious health consequences in jail -- including a heightened risk of contracting COVID-19 -- and how that might affect the risk of non-appearance, danger, or obstruction a defendant poses.  This factor does not encompass a generalized fear of contracting COVID-19 or some other illness in jail.  See Request to Modify, 242 N.J. at 379.

5. *Other factors relevant to pretrial detention that are outlined in N.J.S.A. 2A:162-20.*  Section 20 lists various factors courts may take into account at the original detention hearing.  Trial judges are not required to reassess all of them anew at a reopened hearing.  In some instances, for

example, the nature and seriousness of the offense will remain the same. See N.J.S.A. 2A:162-20(a). But other factors might have changed with the passage of time, such as the strength of the State's case. See N.J.S.A. 2A:162-20(b). It might be weaker if a witness is no longer available, or stronger as a result of additional evidence gathered during an expanded investigation.

A number of the above five factors might well have an effect on whether a defendant will appear for a court proceeding as required. N.J.S.A. 2A:162-18(a)(1). Their impact on the risk of danger or obstruction, which are also critical, is less clear, particularly for defendants charged with more serious offenses who pose a continuing public safety concern or have a long record of criminal behavior. Nonetheless, we do not rule out that certain defendants may be able to show material changes in those risk areas as well.

We note that a court's decision on pretrial release reflects an overall evaluation of the level of risk of non-appearance, danger, and obstruction. A change in any one area might -- or might not -- affect the overall calculus.

Movants focused their application on defendants who have been detained for six months or longer. We agree with that approach. It is far less likely courts would find material changes in the case of defendants detained for less time.

We therefore hold that defendants have the right to reopen their detention hearings under N.J.S.A. 2A:162-19(f) if they (1) have been detained for at least six months and (2) can make a preliminary showing that, based on one or more of the above factors, they are entitled to relief.[5] Those threshold requirements are meant to limit hearings to defendants who are better able to show a material change in the level of risk they present, in the context of the pandemic and the delays it has caused. Trial judges have discretion to resolve motions that do not meet both conditions without holding a hearing. Cf. R. 3:21-10(c) (noting that "[a] hearing need not be conducted on a motion" for a change in sentence under Rule 3:21-10(b)).

Defendants subject to a presumption of detention under the statute will likely not be eligible for new hearings because the seriousness of the offense charged -- murder or a crime that subjects a defendant to a sentence of life imprisonment -- weighs heavily in the release decision. N.J.S.A. 2A:162-19(b), -20(a). We note that movants did not seek new detention hearings for that group of defendants.

---

[5] Because disorderly persons offenses are punishable by up to six months in jail, N.J.S.A. 2C:43-8, judges have discretion to entertain and review motions from defendants charged only with such an offense before those defendants have been detained for six months.

New hearings may proceed before the same judge who conducted the original detention hearing or another judge in the vicinage. An application under section 19(f) does not imply that the initial detention decision was erroneous or that the judge cannot reconsider it. As a result, there is no reason to transfer hearings based on new information to a different vicinage or special master, as movants requested.

Relying on the Court's administrative authority, we direct that trial judges conduct reopened hearings in appropriate cases on an expedited basis, and that any appeals be reviewed in the same manner. See N.J. Const. art. VI, § 2, ¶ 3. We ask the Director of the Administrative Office of the Courts to help implement a timely process at the trial and appellate levels.

B.

Movants identify N.J.S.A. 2A:162-21(b) as an alternative statutory basis for relief. Section 21(b) "permit[s] the temporary release of [a] defendant subject to appropriate restrictive conditions, . . . to the extent that the court determines the release to be necessary for preparation of the . . . defendant's defense or for another compelling reason." (emphases added).

Like section 19(f), this provision provides for fact-specific hearings in individual cases. See, e.g., United States v. Clark, 448 F. Supp. 3d 1152, 1159-61 (D. Kan. 2020) (interpreting parallel provision in the federal Bail

26

Reform Act, 18 U.S.C. § 3142(i)); United States v. Stephens, 447 F. Supp. 3d 63, 66-68 (S.D.N.Y. 2020) (same).

Movants contend that the pandemic and the conditions it has fostered -- in particular, the suspension of criminal jury trials -- amount to a "compelling reason" under the CJRA. To the extent that might be the case, the same considerations identified above would arguably apply.

We have instead focused on section 19(f) because its emphasis on new information and materiality offers a more precise standard and familiar structure. In addition, it does not appear at this time that section 21(b) would address situations section 19(f) does not encompass in the context of the pandemic.

V.

We add the following. Although we recognize the evolving nature of the pandemic, we hope to continue to see improvements in the ongoing health crisis. Vaccinations are underway throughout the State, and prison inmates and staff have been designated a priority and are included in Phase 1A of the State's vaccination plan. N.J. Dep't of Health, N.J. Interim COVID-19 Vaccination Plan, at 36, 39 (Dec. 15, 2020), https://nj.gov/health/legal/ covid19/NJ%20Interim%20COVID-19%20Vaccination%20Plan%20- %20Revised%2012-15-20.pdf. According to the Attorney General, pretrial

detainees in Hudson and Passaic County jails were to start getting vaccinated the week of January 18, 2021; inmates in Burlington County were scheduled to be vaccinated later in January; and other locations were to follow.  The CPA also relies on submissions from various county jails in late December 2020 that it contends point to a reduced infection rate in county jails of less than two percent.

The Judiciary, as noted earlier, will again resume criminal jury trials in person when conditions sufficiently improve.  Although there will be a considerable backlog of cases to address, we hope that recent positive developments will enable the criminal justice system to resolve many outstanding criminal charges in a timely manner.

## VI.

For the reasons set forth above, we grant in part and deny in part the relief requested.


JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in CHIEF JUSTICE RABNER's opinion.

28